VONDERAHE, EXECUTOR, ETC. *v.* ORTMAN ET AL.

[No. 18,982. Filed January 13, 1958. Rehearing denied February 21, 1958. Transfer denied April 9, 1958.]

382

Curtis W. Roll, of Kokomo, for appellant.

Joseph A. Noel, Leroy M. Lacey, Jr., Jump, Noel & Lacey, of counsel, and Robert J. Kinsey, of counsel, all of Kokomo, for appellees.

KELLEY, C. J.—The decedent, Ed Ortman, died testate on August 2, 1955, the owner of certain real estate in Howard County, Indiana. The will of said decedent directed the executor thereof to pay his just debts, bequeathed certain personal property, and then directed the executor to sell all the rest and residue of his property, real and personal, and convert the same into cash. The following pertinent specific provisions are contained in the will:

### ITEM III.
" . . . . The sale of my personal property and the sale of my real estate shall be upon such terms and conditions as the court having jurisdiction of my estate may order and determine upon petitions duly filed by my Executor for such purpose.

### ITEM IV.
"*After* my Executor has complied with the provisions of Item III. above and all of my estate has been converted into cash, I will and direct that said Executor from the proceeds of such sale and the cash on hand and in bank pay all of my just debts and pay all state, county and township property tax that may be assessed against my property at the time of my death and pay all state gross income tax, state inheritance tax, all federal income tax and any and all federal estate tax, if any, and all other tax that may be assessed

against the property or my said estate. It is my will that all taxes that accrue or arise by reason of my death and by reason of the provisions of this Will be paid by my Executor and that no such tax shall be assessed against the beneficiaries herein or paid out of their separate bequests."

Said will of the decedent was duly probated on August 8, 1955 and is certified to have been recorded on the same date in the Will Records of said Howard County.

On August 8, 1955, appellant, Jack Vonderahe, was appointed executor of said will and he duly qualified, and notice of his appointment was properly published, the last date of publication being August 24, 1955. The estate of said decedent was opened August 8, 1955, and is now pending in the Howard Superior Court.

On September 12, 1955, said executor filed his petition in said court to sell the real estate of the decedent, making parties thereto the beneficiaries named in the will and the tenant in possession of the real estate. The petition averred the direction in said Item III. of said will for the sale of the real estate by the executor and that the purpose of the petition was to obtain an order of sale thereof and "to have the court fix the terms of such sale." All of said beneficiaries either appeared to said petition by counsel or consented thereto and the record discloses no objection to said petition or the prayer thereof by any of them.

An order authorizing the executor to sell the real estate in parcels at public auction for not less than two-thirds of the appraised value thereof was entered by the court on September 16, 1955. Said order further provided that the real estate be sold "free and clear of all liens and encumbrances *except the taxes for the year 1955 due and payable in 1956*" (italics furnished), and that notice of the sale be published once each week for three consecutive weeks. Notice of the sale was duly published in a public daily news-

paper of Kokomo, Indiana, describing the real estate, giving date of the sale, and that the same would be sold *"free and clear of all liens and encumbrances except for the year 1955* due and payable in 1956." (Italics supplied.)

On October 24, 1955, the executor filed his Report of Sale of the real estate, reporting therein that on October 1, 1955, two parcels of the real estate were sold to appellees Richard K. Ortman and Joseph N. Ortman and his wife, and on the same date the two remaining parcels of the real estate were sold to appellee, R. Franklin Zehring, and his wife; that said real estate was sold *"subject to the taxes for the year 1955, due and payable in 1956."* (our italics); and reporting other essentials of the sale, not important to the question before us. Request for approval and confirmation of the sale was made.

By its order of October 24, 1955, the court found that the Executor "after giving notice of the time, *terms* and place of sale *as required by the order of this court"* (our italics) sold the real estate as reported, and "in all things ratify and confirm the same *together with the acts of said executor as by him reported."* (Italics supplied.) The executor was ordered to execute his deeds conveying Parcel 1 to appellee, Richard Kirby Ortman, Parcel 2 to appellee Joseph Ned Ortman and his wife, and Parcels 3 and 4 to appellee R. Franklin Zehring and his wife. Said deeds were reported as signed by the executor and the same were "examined" and "approved" by the court and ordered delivered to the purchasers upon their payment of the residue of the purchase price. The deeds appear in usual form and recite the consideration thereof and contain no reference to the taxes.

On February 10, 1956, appellee, Richard K. Ortman, filed a claim against the estate of said decedent for

$195.60 and on the same date appellee, Joseph N. Ortman, filed his claim against said estate for $348.60. On April 27, 1956, appellee, R. Franklin Zehring, filed his claim against said estate for $777.48. Said claims were predicated on a claim for reimbursement by the estate to the claimant for the payment by him of the 1955 taxes, payable in 1956, on the real estate so purchased from the executor. The respective claims were disallowed by the executor and thereafter were transferred to the court's trial docket as a civil action. By agreement the several causes were consolidated and submitted to the court for trial, without jury.

The court found for the respective claimants in the amounts claimed and entered judgments on the several findings. The court overruled appellant's motions for a new trial and such ruling is assigned as error. By stipulation of the parties, the consolidated causes are submitted to us as one single appeal.

The initial matter for consideration is whether the alleged claims of appellees were of such character and nature as to constitute valid, allowable claims against the estate of the decedent. The facts as heretofore delineated show that the appellees purchased the real estate under the terms and conditions of sale prescribed by the court and as published in a public daily newspaper for three consecutive weeks, pursuant to the order of the court in that behalf. One of those terms and conditions of sale was that the real estate would be sold free and clear of all liens and encumbrances "except taxes for the year 1955 due and payable in 1956." The executor's report of sale reported that the sale had been made to appellees subject to such taxes, and such sale, as so reported, was duly ratified and confirmed by the court and the executor's deeds to appellees, executed pursuant to the order of the court therefor, were examined and ap-

proved by the court and ordered delivered to appellees. Under such facts, there appearing nothing in the record negativing the fact of notice, it must be presumed that appellees purchased the real estate and accepted the deeds of conveyance thereof with full knowledge of such terms of sale and that the real estate was sold to them subject to the 1955 taxes, payable in 1956. Further, the deeds to appellees reciting the Order Book and page wherein the order of the court was entered authorizing the executor to execute the deeds was notice of the contents of the order under and pursuant to which the deeds were executed. *Pierce, Administrator* v. *Vansell et al.* (1905), 35 Ind. App. 525, 536, 74 N. E. 554.

Appellees' alleged claims as disclosed by the record, arose subsequent to decedent's death and were not the outgrowth of any contract or arrangement with decedent in his lifetime. A claim, as that term is used in the probate code, §7-802, Burns' 1953 Replacement, is a debt or demand of a pecuniary nature which could have been enforced against the decedent in his lifetime and could have been reduced to a simple money judgment. *Tinkham, Executor* v. *Tinkham et al.* (1942), 112 Ind. App. 532, 538, 45 N. E. 2d 357; *Williams et al.* v. *Williams, Admr. et al.* (1940), 217 Ind. 581, 585, 29 N. E. 2d 557. Such claim is not designed to try an issue arising out of the conduct of the executor or administrator occurring after his appointment. *Isbell* v. *Heiny, Administrator* (1941), 218 Ind. 579, 582, 33 N. E. 2d 106.

It seems clear under the facts and the cited authorities, that appellees' actions, asserted as claims against the decedent's estate, were not of such character and nature as to constitute them valid and allowable claims against said estate, within the meaning of the aforesaid section of the probate code.

Appellees attempt to justify the filing of such alleged claims and the determination thereof by the court, upon the ground that under Item IV. of decedent's will, above quoted, the executor "had a solemn fiduciary duty to pay the taxes pursuant to the express direction of the decedent in his will" which the executor failed to perform, and the court had "the right and duty to construe Testator's will to determine Testator's intent with regard to the payment of real estate taxes," so that the court was "correct in allowing the claims of the appellees and thus carrying out the express wishes of the Decedent."

We fail to perceive the force of this contention. It may be that the court in a proper action for such purpose would be authorized to construe any ambiguous provision of the will, but we are at loss to comprehend upon what basis the court can permit improper claims against an estate upon the theory of construing the will. The action and orders of the court in authorizing and fixing the terms of the sale of the real estate by the executor had become final and crystallized and could not be altered by collateral proceedings. No action or petition to change or modify said orders and proceedings with reference to the sale of the real estate and the confirmation thereof was ever taken or filed by any person or party, insofar as the record reveals. Yet the action of the court in adjudicating said asserted claims had the effect of collaterally changing, altering, and modifying such orders and proceedings, so that the real estate was not sold free of the 1955 taxes payable in 1956, as therein provided, but, by the allowance of said claims, the real estate was, in fact, sold free and clear of such taxes.

Even if appellees' said contention be countenanced, it lacks conviction. The will, with regard to the provision mentioned, does not indicate any ambiguity. It

provides, *inter alia,* that the executor pay the designated taxes from the proceeds of the sale. In applying ordinary and common understanding to the meaning and purpose of said provision, wherein lies the difference whether the executor shall sell the real estate for a certain price and then personally pay the taxes out of the amount received, or whether he should sell the real estate at a price which permits the buyer to pay the taxes? In either event he has complied with the terms of the will, as written.

The will was a matter of public record at the time of the proceedings leading to and the sale of the real estate to appellees. The executor's petition for the fixing by the court of the terms of the sale referred to the appropriate provisions of the will, and the notice of sale given in the public newspaper described the appellant as the executor of the last will and testament of Ed Ortman, deceased. It must be assumed, then, that appellees had knowledge of the will at the time of their negotiation for and purchase of the real estate. Notwithstanding, insofar as the record reveals, appellees voiced no objection to the sale and accepted their deeds without protest to the action taken by the executor or the terms under which the real estate was sold. Such conduct by appellees would, it seems, constitute a waiver by them of any right they may have claimed to possess to insist upon appellant's compliance with the will provisions, as construed by them. At this point, it may be well to advert to the principle that in sales by executors and administrators, the maxim of *caveat emptor* applies (Henry's Probate Law and Practice, Vol. 1, Sec. 12, note 10, page 745) and, therefore, it would seem to have been the duty of appellees, before they consummated the purchase of the real estate, to search the records as to the source of their title and determine

therefrom the rights, duties and limitations of the executor.

The parties advance other propositions for our consideration, but in view of our conclusion that the court erroneously determined upon and adjudicated the alleged claims of appellees as proper and valid claims against the estate of the decedent, it seems unnecessary to now consider them.

The judgments appealed from are each reversed and this cause is remanded with instructions to sustain appellant's motion for a new trial and for further proceedings not inconsistent herewith.

Royse, P. J., dissents upon the ground that in his opinion the appellant executor has no appealable interest and has no right to maintain this appeal.

### ON PETITION FOR REHEARING

KELLEY, C. J.—Appellees, in their petition for rehearing, assert that we failed to give a decision of a substantial question arising on the record, namely, whether or not appellant had an appealable interest.

Such decision was unnecessary as appellant's right to appeal does not appear upon the record as any claimed error of the trial court for which reversal is sought. We have already ruled on the question adversely to appellees when we denied their petition to dismiss the action which was predicated on the ground that appellant possessed no appealable interest.

Appellees further assert we were in error in holding that their claims were not of such a nature as to constitute them valid and allowable claims against the estate. This proposal of appellees is based upon the apparent theory that when they paid the real estate taxes, which were assessed on the land prior to dece-

dent's death, they became "subrogated" to the "rights" of the State of Indiana.

We must first observe that our opinion did not delve into a consideration of any matter of subrogation because appellees' brief was so worded that we thought it confined to the statements made therein. As explanatory, it appeared from the record that the claim of appellee, R. Franklin Zehring, was filed more than six months after the first published notice to creditors, and appellant contended in his brief that such claim was filed too late. In answer thereto, appellees stated in their brief: "Thus, when appellees paid the real estate taxes, they became subrogated to the rights 'of the state and any subdivision thereof . . . ' and therefore *were not obliged to file a claim within the six months' period*." (Our emphasis.) We, therefore, concluded from the wording of the brief that their reference to the subject of subrogation was devoted to the exculpation of the claim of Zehring from appellant's charge that it had not been filed within the statutory time; and, since the conclusion we reached furnished no occasion for determining that question, we did not give it countenance.

It does not appear to us that appellees are in any position to urge the application to their situation of the equitable principles of subrogation. The circumstances and conditions attendant upon their purchase of the real estate from the executor, pursuant to and under the terms of the sale as fixed by proper order of the court, as particularly delineated in our opinion, would seem, in themselves, without further exploration, to dispel any valid claim by them of rights of subrogation. No fraud or impropriety in the proceedings leading to nor in the conduct of the sale by the executor is asserted. As pointed out in the main opinion, all pertinent and essential matters, such as the will, the

court proceedings, the order authorizing and prescribing the terms of sale, and all other actions and proceedings taken by the court and the executor in connection with the sale of the real estate purchased by appellees, were of public record, and appellees make no contention that they were without knowledge thereof.

It must fairly follow, then, that appellees' advanced proposal of subrogation hangs on the frail hook that by reason of their payment of the real estate taxes, which, by reason of their purchase of the real estate under and pursuant to the terms fixed by the court, were voluntarily assumed by them, they thereby became substituted creditors of decedent's estate in the place of the State of Indiana. Appellees quote the rule found in some of the Indiana cases:

> "The right of subrogation is not founded upon contract, express or implied, but upon principles of equity and justice, and includes every instance in which one party, not a mere volunteer, pays a debt for another, primarily liable, which in good conscience should have been paid by the latter."

While necessarily incomplete as to all aspects of the rule, the principle, as quoted, suffices in most instances as an applicable affirmation. Fundamentally, as impliedly stated in the quoted pronouncement, the doctrine of subrogation or, as is sometimes stated, the "doctrine of substitution," is a "device adopted by equity to compel the ultimate discharge of an obligation by him who in good conscience ought to pay it." "It is not an absolute right, but one which depends upon the equities and attending facts and circumstances of each case." 50 Am. Jur., *Subrogation*, sections 2 and 10.

It seems vain to now further expand the ramifications and various applications of the doctrine. Simply

put, the attending facts and circumstances of the instant case, as portrayed in the original opinion, are inadequate to present a case where appellees have paid the debt of another, which *in good conscience* should have been paid by the latter. The appellees purchased under an order of the court which expressly provided that the involved taxes were a lien not excepted as an encumbrance on the realty. Therefore, appellees bid in the property and bought the same subject to the encumbrance of the tax lien. They bought it at a judicial sale and their purchase thereat was subject to the rules and principles applicable to such sales. Our Supreme Court, many years ago, by adoption, lent expression to the law with reference to judicial sales, in the case of *Seamans* v. *Harvey* (1876), 52 Ind. 331, 333, 334.

To an action for money had and received and for work and labor performed, the appellant, in that case, answered, in the fourth paragraph, that he purchased the real estate of the appellee at a sheriff's sale, on foreclosure decree; that the real estate was encumbered by the lien of unredeemed taxes which appellee had failed to pay; that to prevent the sale of the land appellant paid the taxes; and he offered to set the same off against appellee's claim. There was no warranty in the mortgage, nor any contract by the mortgagor to pay the taxes. The error assigned was the sustaining of a demurrer to the answer.

The court quoted from the work of "Mr. Rorer" on judicial sales as follows:

"It is a well settled principle that in judicial sales there is no warranty. This principle, as a general rule, holds good as to all those sales of real property (they being in character judicial sales) made in equitable proceedings, under the direction and control of the courts, usually de-

nominated mortgage sales, guardian's, *executor's*, and *administrator's* sales, sales for enforcement of vendor's and statutory liens, and sales in proceedings for partition. In short, in all sales made under supervision and control of the courts on decrees in equity or on decrees made in the exercise of equity powers, there is no warranty; *the purchaser takes what he gets.* The officer, trustee, or person executing the deed is the mere 'agent or instrument' of the court; is not liable for defect of title or insufficiency of the proceedings; nor at all, except for fraud, unless he conveys with warranty, and then the covenant of warranty binds him personally and him only." (Our emphasis.)

The court then made its own declaration on the subject, apropos here, and finished with these words:

" . . . but having purchased the land with the incumbrance upon it, it may be presumed that he (the appellant) took the incumbrance into account in determining the amount he would pay, and that he bought the land with the understanding that he would have to discharge the incumbrance in addition to the amount bid by him at the sale of the premises."

It seems to us that the circumstances and conditions surrounding appellees' bid for and purchase of the real estate at the executor's sale were such as not to call for the application of the principles of the equitable doctrine of subrogation but rather, that said circumstances encompass appellees within the rules laid down in the Seamans case, *supra.* It can be said upon the record that appellees bought the land with the understanding that they would have to pay the taxes in addition to the amount of their bid therefor. Upon the same consideration, all other potential bidders would be held to possess a like understanding. But appellees now seek to circumvent the equality of the basis for such bids by an after affirmed provision of the will, which asserted provision, prior to and during the entire proceedings leading to and

the sale of the real estate to appellees, was a matter of public record and notice to appellees of the contents thereof. Such facts seem impotent to support a conviction that "clean hands" tendered the entreaty for the interposition of equitable substitution.

Lastly, appellees urge that we erred in holding that when, under the facts and circumstances set forth in the original opinion, they purchased the real estate without objection to the sale and accepted their deeds without protest upon any ground, such conduct would seem to constitute a waiver by them of any right they may have possessed to insist upon *their construction* of the executor's duty, under the will. They iterate the same contention made originally, namely, that the court had a duty to construe decedent's will and to hold that appellees had waived their rights would deprive the court of its power of judicial construction. But the referred to waiver extends to any claimed rights of appellees and does not have any reference to or affect upon the judicial powers of the court. We iterate what we stated in the challenged opinion, to-wit: that "It may be that the court in a proper action for such purpose would be authorized to construe any ambiguous provision of the will, but we are at loss to comprehend upon what basis the court can permit improper claims against an estate upon the theory of construing the will."

The petition for a rehearing is denied.

### DISSENTING OPINION

ROYSE, P. J.—Dissents for the reason that he does not believe appellant has an appealable interest in this case, as stated in the dissent to the original written opinion.

NOTE.—Reported in 146 N. E. 2d 822.
Rehearing denied in 147 N. E. 2d 924.