In the Matter of the ESTATE OF David H. DEVINE, Jr.

SUMMIT BANK, Administrator, Appellant,

v.

Carolyn Devine ELLIS, Appellee.

No. 27A04–9208–CV–280.

Court of Appeals of Indiana, Fourth District.

Feb. 1, 1994.

Michael D. Conner, Mark E. Spitzer, Browne Spitzer Herriman Browne Stephenson & Holderead, Marion, for appellant.

William R. Clifford, Anderson, for appellee.

MILLER, Judge.

David H. Devine, Jr. died owing $170,000.00 to Star Financial Bank for a loan that was secured by a mortgage on his mortuary. He had also given Star Bank a general assignment of his life insurance policy that named his sister, Carolyn Devine–Ellis, beneficiary. Apparently, the assignment was additional collateral for the mortgage which pre-existed the assignment.[1] Appellant's Brief p. 4. After his death, Star Bank elected to collect the policy proceeds of $41,475.00. The administrator of David's estate then sold the mortuary for $240,000.00. Of this amount, $133,424.30 was paid to Star Bank in satisfaction of the debt and the excess proceeds went into the estate. Carolyn, who was not an heir, received nothing.

Carolyn filed an action for declaratory judgment claiming that the mortgage debt should have been paid first from the proceeds of the sale of the mortuary, rather than from the insurance policy proceeds. In response, the administrator moved for summary judgment. The trial court found for Carolyn and ordered the administrator to pay her an amount equal to the policy proceeds—$41,475.00.

We agree and affirm.

## DECISION

The administrator now claims that the trial court's order was inappropriate because: (1) Carolyn did not file her claim within the five month period set forth in Ind.Code 29–1–14–1, *infra;* and (2) even if her claim is not barred by the statute, the decedent did not intend to give Carolyn a right of subrogation, because the assignment agreement between

---

1. There was testimony at the declaratory judgment hearing that the 1989 note and mortgage were just the latest in a series of executions and refinancing of the original obligation.

David and Star Bank clearly demonstrated an intent to designate the insurance proceeds as the primary collateral for the debt. In reviewing the propriety of summary judgment, we apply the same standard that was before the trial court. *Jackson v. Blanchard* (1992), Ind.App., 601 N.E.2d 411, 414. When filing a motion for summary judgment, the movant bears the burden of establishing the nonexistence of disputed facts and that he is entitled to judgment as a matter of law. Ind.Trial Rule 56(C). The trial court must view the facts and the inferences that follow in the light most favorable to the non-movant. Where the facts are undisputed, the trial court's decision is a matter of law, which we review *de novo*. *Humana Health Care Plans v. Snyder–Gilbert* (1992), Ind.App., 596 N.E.2d 299, 300.

## I. CAROLYN'S CLAIM WAS TIMELY

■ The administrator argues that Carolyn's claim was not filed within five months after the first notice to creditors and, therefore, is barred by I.C. 29–1–14–1, which provides in relevant part:

> [A]ll claims against a decedent's estate, whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract or otherwise, shall be forever barred against the estate … unless filed with the court in which such estate is being administered within:
> (1) five (5) months after the date of the first published notice to creditors[.]

Carolyn was not asserting a "claim" within the meaning of the statute because a "claim," as that term is used in our probate code, "is a debt or demand of a pecuniary nature which could have been enforced against the decedent *during his lifetime* and reduced to a money judgment." Ind.Code 29–1–1–3; *Matter of William's Estate* (1980), Ind.App., 398 N.E.2d 1368, 1370 (quoting *Vonderahe v. Ortman* (1958), 128 Ind.App. 381, 146 N.E.2d 822, 825, *reh'g denied*, 128 Ind.App. 381, 147

N.E.2d 924). Carolyn's subrogation action is founded upon her entitlement to proceeds from her brother's life insurance policy. Until her brother died, Carolyn's interest in the proceeds was not presently vested, but only an expectancy during her brother's life, contingent upon her being the beneficiary at the time of his death. *Metropolitan Life Ins. Co. v. Tallent* (1983), Ind., 445 N.E.2d 990, 992; *accord, Quinn v. Quinn* (1986), Ind.App., 498 N.E.2d 1312, 1313, *reh'g denied; Wolf v. Wolf* (1970), 147 Ind.App. 240, 259 N.E.2d 93, 95. Carolyn could not have brought an action against her brother during his lifetime for any of the insurance proceeds. Her present action is not a claim as that term is used in I.C. 29–1–14–1 and, therefore, is not barred by the statute.

## II. RIGHT TO SUBROGATION

The question before us is one of first impression in this jurisdiction: May the beneficiary of a decedent's life insurance policy, which was assigned as additional collateral for a debt also secured by a real estate mortgage, subrogate a claim against the mortgagee who collected the policy proceeds in partial satisfaction of the debt?[2]

■ An insurance policy is a type of property which may be assigned as collateral. 43 Am.Jur.2d *Insurance* § 803 (1982). When an insured assigns an insurance policy, the beneficiary is not divested of his or her general interest in the proceeds; rather, a lien is created in favor of the assignee to the extent of the debt owed. *Id.* at § 802. Once the debt has been paid, the policy continues in effect as if there had been no assignment, and it is the assignee's duty to account to the beneficiary or the debtor's representative for the excess proceeds. *Id.* at § 816; *see, also,* Annotation, *Right of Life Insurance Beneficiary against Estate of Insured who Used Policy as Collateral,* 91 A.L.R.2d 496, § 3 (1963).

---

2. Thus, this case differs from the subrogation claim before the court in *Smith v. Wells* (1919), 72 Ind.App. 29, 122 N.E. 334. In *Smith,* the decedent assigned a contract of life insurance as security for his debt, in addition to giving a note and mortgage on real estate. However, the decedent in *Smith,* at the time of the assignment, also executed an agreement *expressly* granting the beneficiaries the right to be subrogated to the creditor's interest in the mortgaged property in the event the decedent's debt should be paid out of the policy's proceeds. *Id.* 122 N.E. at 337–38. Here, unlike *Smith,* we do not have an express grant of subrogation to the beneficiary.

A different issue arises where, as here, the life insurance policy was not the sole collateral securing the debt, and the creditor obtains satisfaction of the debt from the insurance policy first and from the mortgaged real estate second. Both Carolyn and the administrator have provided this court with several references to case law from other jurisdictions which have confronted this very issue. The cases agree that, absent express language to the contrary, subrogation is appropriate where it appears from all the facts and circumstances that the parties intended the real estate to be the primary security, and is inappropriate where the insurance policy was intended as the primary security.[3] *See, e.g., Murphy v. Murphy* (1972), 259 S.C. 147, 190 S.E.2d 735; *Rountree v. Frazee* (1968), 282 Ala. 142, 209 So.2d 424; *Ex Parte Boddie* (1942), 200 S.C. 379, 21 S.E.2d 4; *Barbin v. Moore* (1932), 85 N.H. 362, 159 A. 409; *Falk v. Vreeland Trading Corp.* (1984), 284 S.C. 201, 325 S.E.2d 333; *Murnane v. Murnane* (1969), Ky.App. 447 S.W.2d 590; *see, also,* 91 A.L.R., supra, § 5. In the cases where subrogation has been allowed, the life insurance beneficiary is not simply granted the status of a common creditor against the insured's estate; he or she is subrogated to the rights of the creditor, who had the right to foreclose against the specific real estate securing the insured's debt, in an amount equal to that paid out of the policy's proceeds—here, $41,475.[4] 91 A.L.R., *supra.*

For example, *Murphy, supra,* involved a factual situation similar to the instant case. There, the court examined the language of the mortgage and assignment and concluded that absent express language indicating that the parties intended the proceeds from the insurance policy to be used as primary collateral, the provision that the mortgage was given as security for the debt was a clear

indication that the mortgage was intended to be the primary security. Thus, the beneficiary of the insurance policy was entitled to subrogation. By contrast, in *Berger v. Berger* (1936), 264 Ky. 225, 94 S.W.2d 618, the court found that the language of the mortgage specifically indicated that the proceeds from the life insurance policy would be applied to the debt first. Further, the real estate would only be sold to pay off the debt in the event the insurance policy was no longer in effect. Thus, the beneficiary was denied subrogation.

Here, in support of its claim, the administrator relies exclusively upon language in the April 20, 1987 insurance policy assignment as proof that decedent intended the policy to be the primary security for the debt. Paragraph I of the assignment, in relevant part, provides:

> The Assignee may take or release other security . . ., or may apply to the [debt] *in such order as the Assignee shall determine,* the proceeds of the Policy hereby assigned . . ., without resorting or regard to the other security.

R. at 71 (emphasis added). Contrary to the administrator's assertions, however, this language does nothing more than allow Star Bank the discretion to *elect* to go against the policy proceeds first. The fact that Star Bank chose that course of action only proves that it was a quick means to obtain part of the balance due under the note without having to wait for a sale of the mortgaged property. We note that the assignment is a standardized form and find nothing in its language that refers to the $170,000.00 debt, much less whether David expressly intended the insurance policy to be the primary source of collateral for that debt. Had that been his

---

**3.** This only makes sense. Although we could find no cases that say so, it is obvious that if the life insurance policy is the primary collateral and the insured defaults before death, the most a creditor can realize from the policy is its cash value, if any. Unlike a mortgage on real estate, the creditor may not foreclose upon the policy's *proceeds,* nor may they (legally) hasten the insured's demise so as to collect the proceeds.

**4.** The doctrine of subrogation is a creature of equity. *Loving v. Ponderosa Systems, Inc.* (1985),

Ind., 479 N.E.2d 531, 536. It is the means by which equity compels the ultimate payment of a debt by one who, in justice, equity, and good conscience, should pay it. *See,* 26 I.L.E. *Subrogation,* § 1 (1960). Using this doctrine, a court substitutes another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the right of the creditor in relation to the debt. *Wilson v. Todd* (1940), 217 Ind. 183, 26 N.E.2d 1003, 1005.

intent, he could have so provided, or he could have exercised his right, reserved under the assignment, to change the beneficiary of the insurance policy from Carolyn to either his estate or Star Bank. Alternatively, he could have expressly provided that Carolyn would have no right of subrogation. *See, Rountree, supra,* 209 So.2d at 431.

Additionally, the note, executed between David and Star Bank on February 15, 1989, states that the accompanying mortgage "protects the Note Holder from possible losses which might result if [the decedent] do[es] not keep the promises [he made] in this Note." *R.* at 76. The mortgage, dated the same day, created a lien in favor of Star Bank on specific real property and expressly provides that it was given to "secure to the Lender ... repayment of the debt evidenced by the Note...." R. at 77. Additionally, the document makes numerous references to the "sums *secured by this Security Instrument,*" but makes no mention of the earlier assignments of the life insurance policy. R. 78–80 (emphasis added). Neither does the mortgage require David to provide additional collateral.

Thus, having found no express language indicating that David intended the insurance policy to be the primary security for his $170,000 debt, we must presume that he intended it to be satisfied from the mortgage held by Star Bank.

Accordingly, this case is an appropriate one for equity to exercise its power to make an adjustment—via subrogation—"that will protect the beneficiary from having to pay the debt which was not hers to pay." *See, Rountree, supra* 209 So.2d at 428. To hold otherwise would not only make the decedent's estate the beneficiary of the policy, but would also effectively make Carolyn primarily liable for the decedent's debt.

The trial court did not err and is affirmed.

CHEZEM and NAJAM, JJ. concur.