Mary C. KONGER, individually and as Personal Representative of the Estate of Dean T. Konger, Appellant,

v.

Tamorah SCHILLACE, K. Tina Lewis, Kevin P. Konger, Teresa L. McEvoy and Molly E. Miller, Appellees.

No. 02A03–0610–CV–500.

Court of Appeals of Indiana.

Oct. 23, 2007.

Robert Owen Vegeler, Vegeler Law Office LLC, Fort Wayne, IN, Attorney for Appellant.

Michael S. Elvin, Lucy R. Dollens, Locke Reynolds LLC, Fort Wayne, IN, Attorneys for Appellees.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Mary C. Konger ("Mary") brings this interlocutory appeal, pursuant to Indiana Appellate Rule 14(A)(1), from the trial court's order that she pay the full principal and interest on a line of credit secured by real property in which she holds a life estate. Mary raises a single issue for our review, which we restate as the following two issues:

1. Whether Mary timely filed a contingent claim against the estate of her late husband for contribution payments on the line of credit.

2. Whether the trial court abused its discretion in denying Mary's Petition to Pay Mortgage Debt from the funds of her late husband's estate while the mortgaged property was an asset of the estate.

We affirm.

### FACTS AND PROCEDURAL HISTORY

On May 19, 2004, Dean Konger ("Dean") along with Mary, his wife, jointly and severally entered into a revolving Home Equity Line of Credit Agreement ("Line of Credit") with Bank One, N.A. ("Bank One"). The Line of Credit was approved for a maximum balance of $50,000 and was secured by a mortgage on Dean and Mary's marital residence ("marital residence"), which was titled solely in Dean. Bank One duly recorded the mortgage on June 2.

On November 24, Dean died testate, leaving Mary a life estate in the marital residence. Mary had no ownership interest in the marital residence during Dean's life. Dean devised a remainder interest in the marital residence to the children from his first marriage, Kevin P. Konger, K. Tina Lewis, Tamorah S. Schillace, Teresa L. McEvoy, and Molly E. Miller (collectively, "Children"). Dean's will did not mention the Line of Credit, and, at the time of Dean's death, the balance on the Line of Credit was $46,255.20.[1]

On December 8, Dean's will was admitted to probate and Mary was named the Personal Representative of Dean's estate. Notice of the probate of Dean's estate was published on December 14 and 21. Neither Bank One nor Mary filed a claim against Dean's estate for payment of the outstanding balance on the Line of Credit.

Approximately one year after Dean's death, Mary filed the Final Report of the Personal Representative of Dean's Estate in the trial court ("Final Report"). In the Final Report, Mary proposed that Dean's estate "pay[ ] 50% of the outstanding ... Line of Credit indebtedness" and that she, "as an individual, pay[ ] off the remaining 50%." Appellee's App. at 3. The Children objected, and, on June 7, 2006, they moved for summary judgment "with regard to the estate's liability for the outstanding bal-

---

1. Specifically, the trial court stated, "[a]s of November 30, 2004 (two days prior to Dean's death), the balance on the [Line of Credit] was $46,255.20." Appellant's App. at 2. Although November 30 was actually six days after Dean's death, the parties do not dispute that the court accurately determined the outstanding balance on the Line of Credit at the time of Dean's death.

ance[,] ... a declaration that [Mary] is solely liable on the [Line of Credit,] ... [and] a declaration that [she] must immediately repay the outstanding balance." *Id.* at 60. Mary opposed that motion and, in her individual capacity, cross-filed for summary judgment "requiring the [Children] to pay the ongoing principal payments owed on the outstanding promissory note and mortgage." *Id.* at 118. At the same time, Mary, in her capacity as Personal Representative, filed with the court a Petition to Pay Mortgage Debt ("Petition") "to pay the monthly payments due on the [L]ine of [C]redit" from the funds of Dean's estate as an expense of administration. Appellant's App. at 13.

■ After a hearing, the court denied both motions for summary judgment and the Petition, entering findings of fact and conclusions thereon. The court agreed with the Children's contention that "Mary did not file a claim against Dean's estate for contribution toward payment of the outstanding balance on the [Line of Credit]," and, as such, "she is barred from receiving contribution from the estate towards payment of the [L]ine of [C]redit." *Id.* at 2–3. The court also held that "Mary is required to fulfill her contractual responsibility and to continue to make payments[ ] [on the Line of Credit] so as to maintain the remainderm[e]n's interest[s] in the real estate." *Id.* at 3. During the administration of Dean's estate, Mary made interest payments of $4,392.25 and principal payments of $3,997.12 on the Line of Credit.[2] This interlocutory appeal ensued.[3]

## DISCUSSION AND DECISION

In general, Mary contends that the trial court erred when it ordered her to pay both the principal and the interest on the Line of Credit. More specifically, Mary's arguments are that the trial court improperly denied summary judgment on her request for contribution, and that the court also improperly denied her Petition that the mortgage debt be paid as an expense of administration. Further, the parties dispute whether the debt on the Line of Credit, secured by the marital residence, is equivalent to a purchase money mortgage on that property.

■ Indiana Code Sections 29-1-14-1 to –21 govern claims against a decedent's estate. Specifically, the Indiana Code provides, in pertinent part:

(a) Except as provided ..., all claims against a decedent's estate, other than expenses of administration ..., whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract or otherwise, shall be forever barred against the estate, the personal representative, the heirs, devisees, and legatees of the decedent, un-

2. On February 28, 2007, Mary, as Personal Representative, conveyed a life estate in the martial residence to herself.

3. The order Mary appeals from was entered by a magistrate rather than a judge, and therefore the order was not a final judgment. *See Christenson v. Struss*, 855 N.E.2d 1029, 1034 (Ind.Ct.App.2006) (citing Ind.Code § 33-23-5-8). Nonetheless, Indiana Appellate Rule 5(B) states that "[t]he Court of Appeals shall have jurisdiction over appeals of interlocutory orders under Rule 14." Ind. Appellate R. 5(B). And Appellate Rule 14(A)(1) permits appeals as a matter of right when the interlocutory order is "[f]or the payment of money." App. R. 14(A)(1). Here, the trial court's order denied Mary's request for summary judgment and her Petition, concluding that Mary "is ... to continue to make payments[ ] [on the Line of Credit] so as to maintain the remainderm[e]n's interest[s] in the real estate." Appellant's App. at 3. Hence, Mary's appeal of the interlocutory order is properly before us.

less filed with the court in which such estate is being administered within:

(1) three (3) months after the date of the first published notice to creditors; or

(2) three (3) months after the court has revoked probate of a will, in accordance with IC 29–1–7–21, if the claimant was named as a beneficiary in that revoked will;

whichever is later.

Ind.Code § 29–1–14–1 (2004) ("nonclaim statute").[4] And Section 7 of that Chapter provides that "[c]ontingent claims which cannot be allowed as absolute debts shall, nevertheless, be filed in the court." I.C. § 29–1–14–7. Again, the crux of the parties' dispute is whether Mary's request from Dean's estate was a valid contingent claim, an "expense of administration," or neither. *See* I.C. § 29–1–14–1(a). We address each contention in turn.

### Issue One: Contingent Claim

■ We first review whether the trial court improperly denied Mary's summary judgment request for contribution from Dean's estate on the Line of Credit. When reviewing a grant or denial of summary judgment, our well-settled standard of review is the same as it is for the trial court: whether there is a genuine issue of material fact, and whether the moving party is entitled to judgment as a matter of law. *Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 973 (Ind.2005). Summary judgment should be granted only if the evidence sanctioned by Indiana Trial Rule 56(C) shows that there is no genuine issue of material fact and the moving party deserves judgment as a matter of law. *Id.* All evidence must be construed in favor of the opposing party, and all doubts as to the existence of a material issue must be resolved against the moving party. *Id.* However, questions of law are reviewed *de novo. See Tippecanoe County v. Ind. Mfrs. Ass'n,* 784 N.E.2d 463, 465 (Ind.2003).

In essence, Mary's argument on this issue is that, because the Line of Credit is secured by Bank One's mortgage on the marital residence, the debt on the Line of Credit is equivalent to a purchase money mortgage on that property. Thus, she asserts that Indiana law requires the holder of a life estate to pay only the interest on the debt secured by the mortgage, while the remaindermen are obliged to pay the principal. *See Oldham v. Noble,* 117 Ind.App. 68, 66 N.E.2d 614, 618 (1946) (stating, in the context of a purchase money mortgage, that the "well settled" law in Indiana required a life tenant to pay the interest on such a mortgage while the remaindermen were required to pay the principal). But Mary confuses her personal obligation on the Line of Credit with her status as a life tenant.

---

**4.** This section is not a statute of limitations, it is a nonclaim statute. *S. Bend Clinic v. Estate of Ruffing,* 501 N.E.2d 1114, 1116 (Ind.Ct. App.1986). It imposes a condition precedent to the enforcement of a right of action and precludes recovery when the condition is not met. *Id.* Unless the claim is filed within three months as prescribed by the statute, any right of action will be forever barred. *See id.* Thus, the time element is part of the right of action itself. *Id.*

In addition, Indiana Code Section 29–1–14–1(d) provides that "[a]ll claims barrable under subsection (a) shall be barred if not filed within nine (9) months after the death of the decedent." However, "when an estate is opened and notice is published, the publication of that notice truncates the ... [nine-month] time limit" of subsection (d). *Burnett v. Villaneuve,* 685 N.E.2d 1103, 1112 (Ind.Ct. App.1997). Here, Dean's estate was opened and notice of the probate of his estate was published promptly. Therefore, the three-month time limit of subsection (a)(1) applies to claims against Dean's estate.

We agree with Mary that, insofar as the remaindermen are concerned, Bank One's mortgage on the marital residence as security for the Line of Credit is equivalent to a purchase money mortgage. As stated in the Indiana Code: "When any real or personal property subject to a mortgage, pledge or other lien is specifically devised, the devisee shall take such property ... subject to such mortgage unless the will provides expressly or by necessary implication that such mortgage be otherwise paid." I.C. § 29–1–17–9. Hence, it is irrelevant whether the encumbrance on the real property is a lien or a purchase money mortgage. And if the Line of Credit only required the payment of interest, the marital residence would pass to the remaindermen with the principal balance on Dean's date of death. But otherwise the remainder interest in the encumbered property is unrelated to Mary's obligation as co-signor on the Line of Credit.

■ Mary's motion for summary judgment against Dean's estate was for contribution on the Line of Credit that she and Dean had entered into, jointly and severally, with Bank One. "The term 'joint and several' means that all parties are bound individually (severally) and as a unit (jointly)." *Scott v. Randle,* 736 N.E.2d 308, 314 (Ind.Ct.App.2000). That Bank One secured the Line of Credit with a mortgage on the marital property is irrelevant to Mary's obligation as a borrower on the Line of Credit. *See McLochlin v. Miller,* 139 Ind.App. 443, 217 N.E.2d 50, 52 (Ind. Ct.App.1966) ("contribution is a right which flows from the debt and it is not affiliated with the security."). Hence, Mary's request for contribution is a contingent claim against Dean's estate based on the joint debt she entered into with Dean.

And "in order to be entitled to contribution, the widow (claimant) must have first paid the debt or more than her proportionate share thereof." *Estate of Leinbach v. Leinbach,* 486 N.E.2d 2, 5 (Ind.Ct.App. 1985).

We have addressed the application of the Indiana Code in the context of joint debts before. As we have stated:

[B]ecause the possibility that Geraldine[,] [the claimant and surviving wife,] would pay the entire obligation [as a co-signor of a joint tax return] and acquire a right of contribution existed at the time of John's death, her claim for contribution is a classic contingent claim which is subject to the time requirements of I.C. § 29–1–14–7. Specifically, John and Geraldine filed a joint tax return in the 1998 tax year. As a co-signor of the joint tax return, Geraldine's liability for the joint debt accrued upon filing of the tax return. Accordingly, she could have paid the debt at any time between filing the 1998 return and John's death on July 25, 2001, thereby acquiring an absolute claim against John....

Therefore, at the opening of the estate, Geraldine had a contingent claim against the estate, dependent on her payment of the joint tax liability. *See Allstate Ins. Co. v. Morrison,* 146 Ind.App. 497, 256 N.E.2d 918 (Ind.Ct.App.1970) (where we held that "a contingent claim is one where liability hinges upon some future event, which may or may not occur; it is dependent upon some condition as yet unperformed"). Thus, we conclude that pursuant to I.C. § 29–1–14–1(d), Geraldine should have filed her claim within nine months after John's death.[5]

5. The facts of *Brown* do not indicate whether notice of the opening of decedent's estate was published. Therefore the proper time limit at issue in *Brown* was the nine-month limit of Indiana Code Section 29–1–14–1(d). *See Burnett,* 685 N.E.2d at 1112.

*Brown v. Delaney,* 840 N.E.2d 6, 9 (Ind.Ct. App.2005).

Here, as in *Brown,* Mary and Dean were each co-signors of the Line of Credit. As a co-signor, Mary's liability for the joint debt accrued upon the authorized withdrawal of funds from the Line of Credit, on May 19, 2004. As such, the possibility that Mary would pay more than one-half of the obligation on the Line of Credit and acquire her right of contribution against Dean existed at the time of Dean's death. Accordingly, she could have paid the debt at any time between the authorized withdrawals and Dean's death on November 24, 2004, thereby acquiring an absolute claim against Dean. *See id.* Had Mary taken those steps, or had she otherwise paid more than her pro-rata share of the Line of Credit debt and filed her claim, it is undisputed that Mary would be entitled to reimbursement from Dean's estate of the amount she paid in excess of her one-half debt. But the evidence clearly shows that Mary did not take any such steps.

Mary contends that *Brown* is distinguishable from the instant case. Specifically, Mary argues that "[t]here is nothing in the *Brown* decision or in the Bank One [L]ine of [C]redit documents that requires acceleration of the payment upon the date of [the] death of the decedent." Reply at 4. But Mary's attempt to distinguish *Brown* ignores the nature of the right of contribution she asserts against Dean's estate. Again, "in order to be entitled to contribution, the widow (claimant) must have first paid the debt or more than her proportionate share thereof." *Leinbach,* 486 N.E.2d at 5; *see also In re Estate of Shoaf,* 750 N.E.2d 426, 428 (Ind.Ct.App.

2001). Mary has neither paid the entire debt nor more than her proportionate share of that debt. Thus, Mary's argument that she had no obligation to "accelerat[e][her] payment" of the debt before asserting a right to contribution misunderstands the nature of a contribution claim. *See Leinbach,* 486 N.E.2d at 5; Reply at 4.

Mary also maintains that the time limit established by the Indiana Code "is irrelevant" because Dean's estate is obligated to pay one-half of the debt on the Line of Credit. Appellant's Brief at 14. In support, Mary cites *Baker v. Happ,* 114 Ind. App. 591, 54 N.E.2d 123, 125–26 (1944), in which we held that "[j]ust claims may be paid by an executor or administrator although not filed and allowed as required [by statute]." But *Baker* was superceded by our Legislature's enactment of the Probate Code.[6] *In re Estate of Ropp,* 142 Ind.App. 1, 232 N.E.2d 384, 386 (1968) ("a claim not filed or paid within the time and in the manner provided by the statute is barred."). Hence, Mary's argument that the time limits of the nonclaim statute are irrelevant is without merit.

Finally, Mary argues that she did not have a "claim" within the meaning of the nonclaim statute, and therefore the time limits contained within that statute cannot apply to her request from Dean's estate. "A claim, as that term is used in [Section] 29–1–14–1, . . . refers to 'a debt or demand of a pecuniary nature which could have been enforced against the decedent in his lifetime and could have been reduced to a simple money judgment.'" *Cardwell v. Estate of Kirkendall,* 712 N.E.2d 1047, 1049 (Ind.Ct.App.1999) (quoting *In re Williams*

---

**6.** Mary also references *Shoaf* and the cases cited therein for support of this position. However, in none of those cases did this court discuss a claim for contribution that was not timely filed. *See Shoaf,* 750 N.E.2d at 427–29. As such, those cases are all inapposite.

Similarly, Mary's contention that Indiana Code Section 29–1–17–9 allows her to seek reimbursement from Dean's estate without first filing a claim is without cogent reasoning and is therefore waived. *See* App. R. 46(A)(8)(a).

*Estate,* 398 N.E.2d 1368, 1370 (Ind.Ct.App. 1980)) (emphasis removed). Again, we cannot agree with Mary.

■ Mary's request for contribution from Dean's estate is based on her joint debt on the Line of Credit. Thus, we are not persuaded by Mary's assertion that her request is not a "claim" pursuant to *In re Estate of Devine,* 628 N.E.2d 1227, 1229 (Ind.Ct.App.1994), in which we held that a life insurance beneficiary did not have a "claim" against the decedent's estate to the proceeds of that insurance policy. *Devine* is readily distinguishable: a life insurance beneficiary cannot bring a claim against the decedent for the proceeds of a life insurance policy during the insured's lifetime. *See id.* But Mary's claim for contribution is on a Line of Credit, not a life insurance policy, and Mary and Dean's joint liability for that debt accrued before Dean's death. As such, *Devine* is inapposite.[7]

**Issue Two: Expenses of Administration**

■■ The parties also dispute whether payments on the Line of Credit should be paid from Dean's estate as an expense of administration. "By statute, the personal representative must pay these expenses." *Trinkle v. Leeney,* 650 N.E.2d 749, 752 (Ind.Ct.App.1995) (citing I.C. § 29–1–13–1). As such, Mary has standing to petition the trial court for expenses of administration as the Personal Representative of Dean's estate. *See id.* In that capacity, Mary filed her Petition "request[ing] th[e] Court for an order allowing [her] to pay the monthly payments due on the [L]ine of [C]redit secured by a mortgage on the residence …, which is an asset of the

Estate." Appellant's App. at 13. The Petition was filed pursuant to Indiana Code Section 29–1–14–20 and alleged that payments from the funds of Dean's estate on the Line of Credit were "in the best interests of the Estate." *Id.*

■ Again, the nonclaim statute provides that "all claims against a decedent's estate, other than expenses of administration," shall be forever barred unless filed within three months after the date of the first published notice to creditors. I.C. § 29–1–14–1(a)(1). Thus, "[e]xpenses of administration are specifically excluded from the nonclaim statute." *Trinkle,* 650 N.E.2d at 752. "[E]xpenses of administration[ ] … generally include all the costs of preserving estate assets incurred after the decedent's death." *Id.* But debts under contracts and mortgages entered into by a decedent are necessarily incurred before the decedent's death and, therefore, payments on those debts are not generally expenses of administration. *See id.; see also* 3 Henry's Indiana Probate Law and Practice § 20.03, at 20–23 (2006) ("Expenses of administration are a debt of the estate, and not of the decedent. …").

Nonetheless, the Indiana Code permits a personal representative to pay contract and mortgage debts from the funds of the estate under certain conditions. Specifically, the Indiana Code states the following:

> When any assets of the estate are encumbered by mortgage, pledge or other lien, the personal representative may pay such encumbrance or any part thereof, … whether or not the holder of the encumbrance has filed a claim, if it appears to be for the best interest of the

---

7. Insofar as Mary also argues, citing *Devine,* that her request for contribution invokes the doctrine of subrogation, we again must disagree. "[S]ubrogation … will protect the beneficiary from having to pay the debt which was not hers to pay." *Devine,* 628 N.E.2d at 1231. But Mary was jointly and severally liable for the Line of Credit. As such, the debt on the Line of Credit was hers to pay, and the doctrine of subrogation cannot apply.

estate. [A]s to any such payment, ... the personal representative must obtain prior authorization or subsequent approval of the court. The making of such payment shall not increase the share of the distributee entitled to such encumbered assets unless otherwise provided by will.

I.C. § 29–1–14–20.[8] Thus, in order for Mary to withdraw funds from Dean's estate to pay the debt on the Line of Credit, that withdrawal would need to be in the best interests of Dean's estate and approved by the court.

We review a trial court's determination of whether a proposed action by a personal representative is in the best interests of an estate for an abuse of discretion. See Kroslack v. Estate of Kroslack, 504 N.E.2d 1024, 1025 (Ind.1987). An abuse of discretion occurs either when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court or the court misinterprets the law. See, e.g., Am. Family Ins. Co. v. Ford Motor Co., 857 N.E.2d 971, 973 (Ind.2006). Although the trial court here made no specific finding as to whether the withdrawal of funds was in the best interests of Dean's estate, the court denied the Petition for the same reasons the court denied Mary's motion for summary judgment. That is, the court found that the outstanding liability on the Line of Credit was Mary's to pay, as she was jointly and severally liable for the Line of Credit with Dean.

In some circumstances, it might be in the best interests of an estate to pay mortgage debt during administration. For example, the trial court might well authorize or approve the payment of interest on a mortgage during administration so that the value of the real property to be distributed is not impaired by the accrual of interest. However, the court is not required to reach that conclusion, and such a decision is reviewed under the abuse of discretion standard.

Here, the court did not abuse its discretion in denying Mary's Petition. Again, Mary and Dean were jointly and severally liable on the Line of Credit, which "means that all parties are bound individually (severally) and as a unit (jointly)." Scott, 736 N.E.2d at 314. Hence, Mary remained liable on the Line of Credit during the administration of Dean's estate.[9] The trial court's finding to that effect was not clearly against the facts and circumstances before it.

## Conclusion

Mary was individually liable on the Line of Credit, and, as such, that debt

---

8. Similarly, the Indiana Code provides the following with regard to debts incurred under contract by the decedent:

   If at the time of his death the decedent was obligated by the terms of any contract to further performance thereunder, his personal representative may, if it appears feasible and in the best interests of the estate, proceed to carry out the terms of such contract. In the event that the performance of such contract shall necessitate the expenditure of funds of the estate, or shall require the utilization of assets other than property which is itself the subject matter of such contract, such personal representative shall request and receive instructions from the court regarding the performance thereof.

I.C. § 29–1–13–13. As both that statute and Indiana Code Section 29–1–14–20 require the withdrawal of funds from the estate to be approved by the court and to be in the best interests of the estate, we need not consider whether Mary properly filed the Petition under Indiana Code Section 29–1–14–20 rather than Indiana Code Section 29–1–13–13.

9. This is not to say that Mary was without recourse. Rather, as discussed above, Mary would have been entitled to contribution from Dean's estate had she properly filed that claim and paid more than her proportionate share of the debt.

was hers to pay. Although Mary may have had a contingent claim against Dean's estate, the Indiana Code required her to file that claim within three months of the published notice of Dean's death. *See* I.C. §§ 29–1–14–1(a)(1), –7. She did not. Thus, we cannot say that the trial court erred in concluding that Mary was "barred from receiving contribution from the estate towards payment of the [L]ine of [C]redit," and, therefore, that she "is required to fulfill her contractual responsibility and to continue to make payments [on the Line of Credit], so as to maintain the remainderm[e]n's interest in the real estate." [10] Appellant's App. at 3. Nor can we say that the trial court abused its discretion in denying Mary's Petition that Dean's estate pay the monthly payments due on the Line of Credit during administration.

Affirmed.

MATHIAS, J., and BRADFORD, J., concur.

---

10. In their brief, the Children assert, in passing, that the trial court's "summary judgment ruling should be affirmed ... but extended to further require that [Mary] immediately satisfy the outstanding balance under the revolving [L]ine of [C]redit." Appellee's Brief at 24. However, the Children's assertion is without cogent reasoning or citation to authority. We therefore do not consider it. *See* App. R. 46(A)(8)(a).