James F. KEENAN and Wells Fargo Bank, N.A., Personal Representatives of the Estate of Judd C. Leighton, and Wells Fargo Bank, N.A., Trustee of the 1993 Revocable Trust created by Judd C. Leighton, Appellants–Defendants,

v.

Nancy O. BUTLER, Ernest M. Oare, Elizabeth O. Shanks, and Robert L. Oare, III, Appellees–Plaintiffs.

No. 71A03–0608–CV–385.

Court of Appeals of Indiana.

July 20, 2007.

---

Richard A. Smikle, Brian J. Paul, Rabeh M.A. Soofi, Ice Miller LLP, Indianapolis, IN, Attorneys for Appellants.

Kevin J. Butler, Paul G. Crowley, South Bend, IN, James L. Thompson, Shana A. Shifrin, Pro Hac Vice, Jenner & Block LLP, Chicago, IL, Paul M. Butler, Jr., Niles, MI, for Attorneys for Appellees.

## OPINION

BAILEY, Judge.

### Case Summary

Appellants–Defendants James F. Keenan and Wells Fargo Bank, personal representatives of the estate of Judd C. Leighton (the "Estate"), appeal the trial court's denial of their motion to dismiss the

breach of contract action brought by the Appellees–Plaintiffs Nancy O. Butler, Ernest M. Oare, Elizabeth O. Shanks, and Robert L. Oare, III (collectively, the "Oares"). We reverse and remand.

### Issue

The Estate raises the sole issue of whether a circuit court has subject-matter jurisdiction over an action filed against a decedent's estate for breach of an oral contract to make a will when the administration of the estate is pending in probate court.

### Facts and Procedural History[1]

According to the Oares' complaint, the relevant facts are as follows. Mary Lou Morris Leighton ("Mary Lou") inherited a substantial portion of her father's multi-million-dollar fortune from his real estate investment and lending business in South Bend, Indiana. After the death of her first husband in 1960, Mary Lou married Judd Leighton ("Judd"). At that time, Judd did not have any significant assets. Allegedly, Mary Lou permitted Judd to manage her personal fortune in exchange for Judd's promise to execute a will and/or trust devising the bulk of his estate to Mary Lou's descendents. This agreement was never reduced to writing.

Judd borrowed money from Mary Lou, interest-free, and was able to cultivate his own substantial wealth. Mary Lou later agreed to execute a codicil to her will forgiving the millions Judd borrowed from her if Judd reaffirmed his obligation to leave the majority of his estate to her descendents, the Oares. Mary Lou communicated the substance of this agreement to James F. Thornburg, their attorney, who drafted wills and trusts for Mary Lou and Judd in compliance with the agreement. Mary Lou's will devised a significant portion of her estate to Judd.

Shortly after Mary Lou was diagnosed with Alzheimer's disease in the 1990s, Judd revised his estate plan, eliminating the Oares as primary beneficiaries. Mary Lou died on March 16, 2001. When the Oares discovered that her estate was substantially less than expected, they requested Wells Fargo, Mary Lou's estate representative, to investigate Judd's management of Mary Lou's finances.

Judd died on December 19, 2005, leaving no descendents. The Oares are not beneficiaries under Judd's will, and from Judd's trust, only inherited some personal property that originally belonged to Mary Lou.

Judd's Estate was opened on February 3, 2006, in the St. Joseph Probate Court. There is no dispute that shortly thereafter, the personal representatives of the Estate published notice of administration as required by Indiana Code Section 29–1–7–7. On April 26, 2006, the Oares filed this action against the Estate for breach of contract in the St. Joseph Circuit Court, claiming they were the third-party beneficiaries of the oral contract between Mary Lou and Judd. On May 12, 2006, in the St. Joseph Probate Court, the Oares filed a "Proof of Claim," referencing this action pending in the St. Joseph Circuit Court.[2]

The Estate filed a motion pursuant to Indiana Trial Rule 12(B)(1) to dismiss the Oares' breach of contract action for lack of subject-matter jurisdiction.[3] At the hear-

---

1. Oral argument was heard on this case on April 17, 2007, in Indianapolis. We commend counsel on the quality of their written and oral advocacy.

2. The Oares assert they took this action as a prophylactic measure.

3. Wells Fargo also filed a 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted, which was also denied by the trial court. However, neither Wells Fargo nor the Estate seek review of the denial of the 12(B)(6) motion.

ing before the St. Joseph Circuit Court on July 19, 2006, the Estate asserted that the St. Joseph Probate Court was the only court with jurisdiction to hear the action, because it is a claim under the Indiana Probate Code that can only be prosecuted in the court presiding over the administration of the estate. On July 28, 2006, the trial court denied the Estate's motion to dismiss and also granted the Estate's oral motion to certify the order for interlocutory appeal. We accepted jurisdiction of this appeal on October 3, 2006.

## Discussion and Decision

### I. Standard of Review

■ Where a trial court makes a ruling based on undisputed facts, then the question of subject-matter jurisdiction is purely a question of law. *GKN Co. v. Magness*, 744 N.E.2d 397, 401 (Ind.2001). Thus, we review the trial court's decision *de novo*, independently evaluating the question of law without deference to the trial court's determination. *Id.*

### II. Analysis

■ Both parties concentrate their arguments on whether the St. Joseph Circuit Court has subject-matter jurisdiction over the current action, disputing whether the alleged breach of contract is a "claim" under the nonclaim section of the Indiana Probate Code. The nonclaim statute provides:

Except as provided in IC 29–1–7–7 [4], all claims against a decedent's estate, other than expenses of administration and claims of the United States, the state, or a subdivision of the state, whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract or otherwise, shall be forever barred against the estate, the personal representative, the heirs, devisees, and legatees of the decedent, *unless filed with the court in which such estate is being administered* within:

(1) three (3) months after the date of the first published notice to creditors; or

(2) three (3) months after the court has revoked probate of a will, in accordance with IC 29–1–7–21, if the claimant was named as a beneficiary in that revoked will;

whichever is later.

(emphasis added). Based on the posture of their arguments, both parties interpret the probate nonclaim statute to provide exclusive jurisdiction of claims to the probate court.

Despite the nonclaim statute providing a definition of a claim, the cases analyzing whether an action is a claim utilize the common law definition announced in *Williams v. Williams*, 217 Ind. 581, 29 N.E.2d 557 (1940), in applying § 29–1–14–1 rather than construing the statutory definition that was added to the Probate Code in 1953. *See In re Estate of Whitehead*, 718 N.E.2d 1207, 1211 (Ind.Ct.App.1999)

---

4. Subsection (e) of I.C. 29–1–7–7 provides: Notice under subsection (d) [requiring the personal representative to serve notice on each creditor of the decedent] shall be served within one (1) month after the first publication of notice under subsection (a) [publication of administration by the clerk of the court] or as soon as possible after the elapse of one (1) month. If the personal representative or the personal representative's agent fails to give notice to a known or reasonably ascertainable creditor of the decedent under subsection (d) within one (1) month after the first publication of notice under subsection (a), the period during which the creditor may submit a claim against the estate includes an additional period ending two (2) months after the date notice is given to the creditor under subsection (d). However, a claim filed under IC 29–1–14–1(a) more than nine (9) months after the death of the decedent is barred.

("Although Ind.Code § 29–1–1–3 of the Probate Code defines claims to include the liabilities of a decedent which survive, whether arising in contract or tort or otherwise . . ., we found that claim, as used in Ind.Code § 29–1–14–1, refers to a debt or demand of a pecuniary nature which could have been enforced against the decedent *in his lifetime* and could have been reduced to a simple money judgment." (internal quotes omitted)); *Cardwell v. Estate of Kirkendall,* 712 N.E.2d 1047 (Ind.Ct. App.1999). Even *Vonderahe v. Ortman,* the first case addressing the definition of claims after the addition of the statutory definition, cites the definition from *Williams* rather than construing the then newly crafted definition. 128 Ind.App. 381, 146 N.E.2d 822, 825 (1958). Our Supreme Court has not analyzed or applied the definition of claims since the legislature added the definition to the Probate Code in 1953.

Contrary to the caselaw utilizing the common law definition of claims, the Estate urges this Court to apply the statutory definition of claims. The Estate asserts that the statutory definition is much broader and would encompass more actions compared to the common law framework. The Oares argue that the *Williams* definition is consistent with the statutory definition and the line of precedent should be followed. However, we need not answer this question and leave it for another day, as we conclude the Oares' action is not a claim due to its nature and character.

During the administration of an estate, the claims against the estate are paid, and then the remaining assets are distributed either according to a will or the intestacy statutes. *See* Ind.Code § 29–1–17–2. Thus, a claim is an action against the gross assets of an estate, and the distribution by will or statute involves the remaining or net assets of the estate. In essence, a claim is an amount for which the decedent was indebted to another and if paid during his lifetime would have reduced the decedent's lifetime assets. This is not the gravamen of an action alleging breach of contract to make a will.

■ "[T]he chief incentive to the acquisition of property is the right that every man has to dispose of that which he accumulates in the manner he may judge best . . ." *Roehl v. Haumesser,* 114 Ind. 311, 15 N.E. 345, 349 (1888). Accordingly, one may enter into a contract, binding himself to dispose of his property in a particular way through his will. *Id.* If the promisor's will is contrary to the contract, the action for breach of that contract to convey by will does not accrue until the death of the promisor. *Kitchen v. Estate of Blue,* 498 N.E.2d 41, 45 (Ind.Ct.App.1986). *See also Matter of Carroll's Estate,* 436 N.E.2d 864, 866 (Ind.Ct.App.1982) ("Generally, the statute of limitations for an action based upon the breach of an enforceable contract to make a will does not commence to run until decedent's death.").

This type of action premised on breach of contract is intended to enforce the promised distribution of a portion or the entire estate of the promisor. The plaintiff in such action does not seek to enforce a debt against the gross assets of the estate. Rather, the plaintiff is challenging the validity of the distribution of the net estate as commanded by the decedent's will. At first it might appear that such an action is in effect a will contest. However, the statute defining a will contest and prior caselaw involving a similar scenario prohibit such a conclusion.

■ Indiana Code Section 29–1–7–17 provides the procedure for contesting a will:

Any interested person may contest the validity of any will in the court having

jurisdiction over the probate of the will within three (3) months after the date of the order admitting the will to probate by filing in the court the person's allegations in writing verified by affidavit, setting forth:

(1) the unsoundness of mind of the testator;

(2) the undue execution of the will;

(3) that the will was executed under duress or was obtained by fraud; or

(4) any other valid objection to the will's validity or the probate of the will.

Subsection 4 of this statute is a general provision permitting other valid objections to a will. However, the scope of this provision still has defined boundaries. The objection must be founded upon either the will's validity or the validity of the probate of the will. Our Supreme Court clarified that the substantive grounds for an attack upon the validity of a will where the admission to probate is procedurally valid are (1) the lack of testamentary capacity or (2) undue execution. *Troxel v. Troxel,* 737 N.E.2d 745, 751 (Ind.2000). In contrast, objections to the probate of the will are founded upon procedural defects in admitting the will to probate. An example is when a valid will is submitted for probate after the expiration of the statute of limitations. *See id.*

The Oares' action does not contest Judd's testamentary capacity or the execution of the probated will. Nor do they claim that the probate of Judd's final will was procedurally defective. Thus, their breach of contract to make a specific devise action is not within the statutory definition of a will contest. This conclusion that the Oares' action is not a will contest is also supported by caselaw regarding the synonymous scenario of breach of a joint or mutual will. *See Brown v. Edwards,* 640 N.E.2d 401, 405 (Ind.Ct.App.1994), *trans. denied; Manrow v. Deveney,* 109

Ind.App. 264, 33 N.E.2d 371, 372–373 (1941).

In summary, the action is not a claim or a will contest. However, this action is a matter that, if successful, could drastically affect, not the value, but the distribution of an estate's assets. Moreover, if both actions were allowed to proceed, additional costs and delay that would reduce the net value of the estate would surely follow. Thus, although either court would have jurisdiction over the subject matter of the contract action, in the end, the proper forum turns on the doctrine of *res in custodia legis.*

 Two courts having concurrent jurisdiction cannot deal with the same subject matter at the same time. *State ex rel. Amer. Fletcher Nat. Bank & Trust Co. v. Daugherty,* 258 Ind. 632, 283 N.E.2d 526, 528 (1972). Once a court has secured jurisdiction over the parties and the subject matter of an action, this jurisdiction is retained to the exclusion of other courts of equal competence until the case is determined. *Id.* The court first acquiring jurisdiction holds the *res in custodia legis* so long as it is empowered to administer complete justice. *Id.* Any contest or interpretation of a will or testamentary trust is to be conducted in the probate court in which the will or trust was initially entered in the correct manner. *Id.* at 529. Although the Oares' action is not a will contest, its goal of altering the ultimate distribution of the property or *res* of the estate is similar. Thus, a court in which a will is correctly filed for probate holds the *res in custodia legis* and has jurisdiction over any will contest, interpretation of the will, or a challenge to the ultimate distribution of the estate's net assets to the exclusion of other competent courts.

Judd's final will was properly filed in the St. Joseph Probate Court. Accordingly,

the St. Joseph Probate Court has jurisdiction of this action to the exclusion of other courts of equal competence.[5] Having determined that St. Joseph Probate Court has jurisdiction, the issue to be determined is whether dismissal or transfer of the circuit court case is appropriate.

Here, an action based on breach of contract to make a will was filed in St. Joseph Circuit Court although the will at issue was being probated within the jurisdiction of the St. Joseph Probate Court. If dismissal were granted, it is apparent that the Estate would challenge the Oares' forthcoming petition, arguing that it would not have been filed within the three months after Judd's will was admitted to probate.[6] Notwithstanding a dismissal, relief is available in the proper circumstances through Indiana Code Section 34–11–8–1, the Journey's Account Statute.[7] This statute is typically used to save an action filed in the wrong court. *See McGill v. Ling*, 801 N.E.2d 678, 684 (Ind. Ct.App.2004), *reh'g denied, trans. denied.*

The purpose of the Journey's Account Statute is to insure to the diligent suitor the right to a hearing in court until he reaches a judgment on the merits. *Id.* at 685. Among the situations to which the Journey's Account Statute applies is when a plaintiff commences an action, and the plaintiff fails in the action due to any cause except negligence in the prosecution of the action. Ind.Code § 34–11–8–1(a)(1). The Journey's Account Statute allows the plaintiff to bring a new action within three years of the determination in the original action or before the running of the statute of limitations governing the original action. I.C. § 34–11–8–1(b). The second action is effectively a continuation of the original action. *Id.*

Here, the Oares brought an action against the Estate for breach of contract to make a will. As we have determined, the action is subject to dismissal without reaching the merits because the action was filed in the Circuit Court rather than the Probate Court. The potential dismissal is not the result of negligence in prosecution, but rather the lack of procedural clarity in the Probate Code. Moreover, this action was filed, albeit in the circuit court, within three months after Judd's will was admitted to probate.[8] Thus, the Oares have the

---

**5.** We emphasize that the name of the court need not contain the word probate to obtain the *res in custodia legis*. Even though St. Joseph County has a probate court, it shares concurrent jurisdiction of probate matters with the St. Joseph Superior and Circuit Court. *See* Ind.Code §§ 33–31–1–9, 33–28–1–2. Had Judd's estate been opened in St. Joseph Superior Court, that court, not the St. Joseph Probate Court, would have held the *res in custodia legis*.

**6.** We have not been asked to decide whether there is a time limit within which an action for breach of contract to make a will must be filed. However, statutes of repose, here limiting the time to file to three months, govern both claims and will contests. *See* I.C. §§ 29–1–7–17 and 29–1–14–1. For timely administration of an estate, a breach of contract to make a will action should similarly be limited. Where the action is challenging the distribu-

tion pursuant to a probated will, the petition must be filed within three months of the order admitting the will to probate. *See* Ind.Code § 29–1–1–9 (Every application to the court, unless otherwise provided, shall be by petition signed and verified by or on behalf of the petitioner.).

**7.** The statute derived its nickname from the common law writ known as a Journey's Account, which allowed a renewal suit to be filed if a lawsuit was dismissed on technical grounds. *Vesolowski v. Repay*, 520 N.E.2d 433, 434 (Ind.1988). The time in which a plaintiff could file the renewal suit was theoretically calculated by the time required for the plaintiff to journey to the proper court. *Id.*

**8.** Judd's will was admitted to probate on February 3, 2006, and the Oares filed the current action on April 26, 2006.

ability to invoke the saving power of the Journey's Account Statute and contest the distribution of Judd's net estate based on the alleged breach of the oral contract to make a will devising the bulk of his estate to the Oares.

In such a situation, we would dismiss the current action and allow the Oares to file the necessary petition in the probate court. However, both parties characterized this matter as a claim rather than a probate matter.[9] Had the characterization been accurate, the outcome of the appeal would have turned on the definition of a "claim." Instead, this Court recognizes that, to harmonize the breach of contract action with the purpose of the Probate Code, the action is properly characterized as a probate matter rather than a claim. Therefore, due to the overall uncertainty as to the characterization of this action and because the probate court is aware of this action, we remand to the trial court with instructions to transfer this matter to the St. Joseph County Probate Court to be dealt with in accordance with our opinion herein.

Reversed and remanded.

SULLIVAN, J., and NAJAM, J., concur.

9. *See* Ind.Code § 33–31–1–9(a) (The probate court in the county for which it is organized has original, concurrent jurisdiction with the superior courts of the county in all matters pertaining to the following: (1) The probate of wills.... (7) Any other probate matters.).