**Suzanne EADS and James Atterholt, Commissioner of the Indiana Department of Insurance,[1] Appellants–Respondents,**

v.

**COMMUNITY HOSPITAL, Appellee–Petitioner.**

**No. 45A03–0807–CV–350.**

Court of Appeals of Indiana.

June 23, 2009.

Rehearing Denied Sept. 25, 2009.

---

1. James Atterholt, Commissioner of the Indiana Department of Insurance, is not seeking relief on appeal and has not filed a brief as appellant. Pursuant to Indiana Appellate Rule 17(A), however, a party of record in the trial court is a party on appeal.

R. Cordell Funk, Funk & Foster, Hammond, IN, Attorney for Appellant, Suzanne Eads.

Sharon L. Stanzione, Johnson & Bell, Ltd., Merrillville, IN, Attorney for Appellee.

## OPINION

BAKER, Chief Judge.

Appellant-respondent Suzanne Eads appeals the trial court's grant of summary judgment in favor of appellee-petitioner Community Hospital (the Hospital). Eads argues that the trial court erred by concluding that (1) the Journey's Account Statute[2] did not apply to her case and (2) her medical malpractice claim was untimely filed. Finding no error, we affirm.

### FACTS

On August 15, 2004, Eads was a patient at the Hospital, having received treatment for an ankle injury. As part of that treatment, Eads's ankle was placed in a cast. Following her treatment, she requested a wheelchair to exit the Hospital, but Hospital personnel refused her request. Instead, a Hospital employee told her that "she could leave the [H]ospital on crutches." Appellant's App. p. 9. As Eads was exiting the Hospital, she passed through the foyer area leading to the garage, where she fell.

On August 8, 2006, Eads filed a complaint against the Hospital in Lake Superior Court (the Negligence Complaint). The Negligence Complaint sought damages for injuries to Eads's back and left hand that she alleged she sustained as a result of the Hospital's negligent refusal to provide her with a wheelchair. The Negligence Complaint was filed within the applicable statute of limitations.

On February 21, 2007, the Hospital filed a motion to dismiss the Negligence Complaint without prejudice, arguing that the Superior Court lacked jurisdiction because it was actually a medical malpractice claim that first had to be filed before the Indiana Department of Insurance ("IDOI").[3] In response, Eads insisted that her claim was based on a premises liability theory and, as such, was not covered by the Medical Malpractice Act ("MMA").[4] The Superior Court agreed with the Hospital and, on April 12, 2007, dismissed the case without prejudice, having found that the Hospital employee's decision to refuse Eads a wheelchair involved medical judgment, which brought the action within the MMA. Eads did not appeal from that order.

On March 26, 2007, just over two weeks before the Superior Court's dismissal of the Negligence Claim, Eads filed a proposed medical malpractice complaint with the IDOI, relying on the same facts recounted in the Negligence Complaint. On February 6, 2008, the Hospital invoked the jurisdiction of the trial court under Indiana Code section 34–18–11–1[5] when it filed a

---

2. Ind.Code § 34–11–8–1.

3. The record before us does not contain the Hospital's motion to dismiss. Therefore, we must glean the contents of that motion from the briefs of the Appellant and Appellee. Appellant's Br. p. 2, Appellee's Br. p. 3.

4. Ind.Code § 34–18–1–1 et seq. The record before us does not contain Eads's response to the Hospital's motion to dismiss; however, the Superior Court set forth her argument in its "Order of Dismissal Without Prejudice." Appellant's App. p. 16.

5. Indiana Code section 34–18–11–1 provides, in pertinent part, as follows:
   (a) A court having jurisdiction over the subject matter and the parties to a proposed complaint filed with the commissioner [of the IDOI] may, upon the filing of a copy of the proposed complaint and a written motion under this chapter ... preliminarily determine an affirmative defense or issue of law or fact that may be preliminarily determined under the Indiana Rules of Procedure ...

   * * *

   (c) The court has jurisdiction to entertain a motion filed under this chapter only during that time after a proposed complaint is filed with the commissioner under this article but before the medical review panel gives the panel's written opinion under IC 34–18–10–22.

petition for preliminary determination of law, requesting summary judgment in favor of the Hospital, arguing that the medical malpractice claim was barred as a matter of law because it was filed outside of the two-year statute of limitations.[6] Following a hearing, the trial court herein entered an order on June 11, 2008, dismissing Eads's malpractice claim with prejudice:

> The Court finds that no genuine issues of material fact exist that would preclude granting a motion for summary judgment under the Trial Rules. Pursuant to Indiana Trial Rule 56, Respondent Suzanne Eads' claims against Petitioner Community Hospital are barred by the Statute of Limitation[s]. Therefore, Petitioner's Petition for Determination of Summary Judgment in favor of Community Hospital is GRANTED. Respondent's claims against Petitioner Community Hospital are hereby dismissed, with prejudice.

Appellant's App. p. 6. Eads now appeals.

### DISCUSSION AND DECISION

■ Our standard of review in this appeal is well settled.

> "A motion for preliminary determination, when accompanied by evidentiary matters, is akin to a motion for summary judgment and is subject to the same standard of appellate review as any other summary judgment disposition. Upon review of a summary judgment determination, we apply the same standard applied by the trial court: where the evidence shows that there are no genuine issues of material fact and the moving party is entitled to a judgment as a matter of law, summary judgment is appropriate. We construe all facts and reasonable inferences drawn

therefrom in a light most favorable to the non-moving party."

*Fairbanks Hosp. v. Harrold,* 895 N.E.2d 732, 735 (Ind.Ct.App.2008) (quoting *Battema v. Booth,* 853 N.E.2d 1014, 1018–19 (Ind.Ct.App.2006)). *trans. denied.* The affirmative defense that the statute of limitations has run is particularly suitable as a basis for summary judgment. *McGill v. Ling,* 801 N.E.2d 678, 682 (Ind.Ct.App. 2004).

■ It is undisputed that Eads filed her malpractice claim with the IDOI after the applicable two-year statute of limitations had run. To rescue her claim, Eads directs our attention to the Journey's Account Statute.

■ The Journey's Account Statute provides as follows:

> (a) This section applies if a plaintiff commences an action and:
>
>    (1) the plaintiff fails in the action from any cause except negligence in the prosecution of the action;
>
>    (2) the action abates or is defeated by the death of a party; or
>
>    (3) a judgment is arrested or reversed on appeal.
>
> (b) If subsection (a) applies, a new action may be brought not later than the later of:
>
>    (1) three (3) years after the date of the determination under subsection (a); or
>
>    (2) the last date an action could have been commenced under the statute of limitations governing the original action;
>
> and be considered a continuation of the original action commenced by the plaintiff.

---

6. Eads cites to a February 8, 2008, filing date; however, the "docket sheet" reveals a filing date of February 6, 2008. Appellant's App. p. 4, 7.

I.C. § 34–11–8–1. The purpose of the Journey's Account Statute is to preserve the right of a diligent suitor to pursue a judgment on the merits. *Keenan v. Butler*, 869 N.E.2d 1284, 1290 (Ind.Ct.App. 2007). The statute is to be liberally construed to protect such diligent suitors. *Vesolowski v. Repay*, 520 N.E.2d 433, 434 (Ind.1988).

■ As our Supreme Court has explained,

> The Journey's Account Statute applies by its terms to preserve only a "new action" that may be "a continuation of the first." Its typical use is to save an action filed in the wrong court by allowing the plaintiff enough time to refile the same claim in the correct forum. For example, the statute enables an action dismissed for lack of personal jurisdiction in one state to be refiled in another state despite the intervening running of the statute of limitations.

*Cox v. Am. Aggregates Corp.*, 684 N.E.2d 193, 195 (Ind.1997). Therefore, if Eads's malpractice claim is to be rescued by the Journey's Account Statute, she must establish, among other things, that her malpractice claim is a continuation of the Negligence Complaint.

In *McGill*, the plaintiff filed federal and state complaints seeking recovery for negligence, gross negligence, and civil rights violations. 801 N.E.2d at 686. After those complaints were dismissed for lack of jurisdiction, McGill filed a proposed medical malpractice complaint with the IDOI after the two-year statute of limitations had run. The defendants filed a motion for preliminary determination of law. The trial court eventually granted summary judgment in the defendants' favor because, among other things, the Journey's Account Statute did not save the claim. On appeal, this court agreed with the trial court:

Here, ... McGill's proposed medical malpractice complaint is not a continuation of her class action claims. While McGill's [negligence and civil rights] complaints share similarities with her proposed [medical malpractice] complaint, *those similarities are not sufficient to save her proposed complaint.* McGill's federal and state court class actions sought recovery for alleged negligence, gross negligence and civil rights violations under 42 U.S.C. § 1983. McGill did not allege a claim for medical malpractice in those suits. Indeed, unlike the language contained in her proposed medical malpractice complaint, McGill's federal and state class action complaints make no mention of the requisite "standard of care" for medical providers in the community, nor does she allege that the Defendants' care and treatment of her husband fell below that standard of care. *See Oelling v. Rao*, 593 N.E.2d 189, 190 (Ind.1992) (stating plaintiff in medical malpractice action must allege, in part, that defendant failed to conform to requisite standard of care).

In addition, under the Indiana Malpractice Act, McGill was required to file her proposed complaint for malpractice with the Department of Insurance *before* she could pursue litigation of her medical malpractice claims in *any court,* state or federal. *See* Ind.Code § 34–18–7–1(b). . . .

Further, our supreme court has held that the Journey's Account Statute applies to medical malpractice actions. *Vesolowski,* 520 N.E.2d at 435. In that case, the court determined that the Journey's Account Statute applied to a medical malpractice claim which had been untimely filed in Indiana, where the victim of the alleged malpractice had timely filed a malpractice claim in Illinois. *Id.* But we cannot extend the

holding in *Vesolowski* to the circumstances here. As we have stated, *this is not a case where McGill filed an initial medical malpractice complaint in a timely manner in the wrong forum, and then later refiled that same complaint in the proper forum. Rather, she first filed class actions complaints, which did not raise medical malpractice claims, and only later filed her proposed complaint in the proper forum, the Department of Insurance.* Because McGill did not file her proposed complaint within two years from the date the alleged malpractice occurred, her claim is barred. *See* I.C. § 34–18–7–1(b). . . .

*McGill,* 801 N.E.2d at 686–87 (some emphases original, some added) (internal footnotes omitted).

Here, as in *McGill,* Eads did not file an initial medical malpractice complaint in a timely manner in the wrong forum. To the contrary, she filed the Negligence Complaint and vigorously disputed the Hospital's suggestion that her complaint sounded in medical malpractice rather than negligence, waiting to file the malpractice claim with the IDOI until two weeks before the trial court dismissed the Negligence Complaint for lack of jurisdiction.

■ If Eads believed that her claim sounded in general negligence, then the trial court's dismissal of her complaint must have been incorrect and she should have appealed that judgment. She did not. If she believed that her claim could feasibly have sounded either in general negligence or in medical malpractice, then she should have filed in the alternative in a timely fashion. She did not.[7]

Although it is true that the factual predicate of and parties involved in Eads's medical malpractice claim are identical to those involved in the Negligence Complaint, the actual claim—the source of the alleged liability—is wholly different. There is a basic distinction between a common law claim of negligence and the statutory medical malpractice regime. Thus, whatever the similarities may be, there is a fundamental difference that prevents the application of the Journey's Account Statute. To hold otherwise would permit plaintiffs an untimely second bite at the apple, and we do not believe that to be the intent of the legislature in crafting the statute.

Inasmuch as we have found that the medical malpractice claim is not a continuation of the Negligence Complaint, the Journey's Account Statute does not apply. Therefore, we are left with a medical malpractice claim that was untimely filed with the IDOI outside the statute of limitations, and we find that the trial court properly granted summary judgment in the Hospital's favor.

The judgment of the trial court is affirmed.

NAJAM, J., concurs.

KIRSCH, J., dissents with opinion.

KIRSCH, Judge, dissenting.

The [Journey's Account Statute] is designed to insure to the diligent suitor

---

7. Even if we found that the malpractice claim was a continuation of the Negligence Complaint, the Journey's Account Statute would not apply to salvage a plaintiff's medical malpractice claim if she failed to file it first with the IDOI before the statute of limitations expired. Filing with the IDOI is a condition precedent to filing the lawsuit, and the failure to do so could only be seen as negligent. Thus, the Journey's Account Statute would not apply. *See* I.C. § 34–11–8–1(a)(1) (providing that the statute only applies if "the plaintiff fails in the action from any cause *except negligence* in the prosecution of the action") (emphasis added).

the right to a hearing in court till he reaches a judgment on the merits. Its broad and liberal purpose is not to be frittered away by any narrow construction. *The important consideration is that, by invoking judicial aid, a litigant gives timely notice to his adversary of a present purpose to maintain his rights before the courts.* When that has been done, a mistaken belief that the court has jurisdiction stands on the same plane as any other mistake of law.

*McGill v. Ling,* 801 N.E.2d 678, 685 (Ind. Ct.App.2004) (emphasis in original) (quoting *Gaines v. City of New York,* 215 N.Y. 533, 109 N.E. 594, 596 (1915)).

Suzanne Eads was a diligent suitor who has a right to have her case heard on the merits. By the filing of her original action, Community Hospital had timely notice of her claim and the full opportunity to investigate its merits and to defend its position. The purposes of the Journey Account Statute were thus satisfied. Contrary to these purposes, my colleagues narrowly construe the statute to defeat Eads' claim without the opportunity to be heard on the merits. I believe such a construction is neither good law, nor good policy. Accordingly, I respectfully dissent.

At common law, suits frequently were dismissed on technical grounds. *Vesolowski v. Repay,* 520 N.E.2d 433, 434 (Ind. 1988); *Basham v. Penick,* 849 N.E.2d 706, 709 (Ind.Ct.App.2006); *McGill,* 801 N.E.2d at 683. In such cases, the plaintiff could file another writ known as a Journey's Account. *Vesolowski,* 520 N.E.2d at 434; *McGill,* 801 N.E.2d at 683. The renewal suit was deemed to be a continuation of the first. *Vesolowski,* 520 N.E.2d at 434; *Basham,* 849 N.E.2d at 709; *McGill,* 801 N.E.2d at 683. The time to bring another suit was computed theoretically with reference to the time required for the plaintiff to journey to where court was held. *Veso-*

*lowski,* 520 N.E.2d at 434; *Basham,* 849 N.E.2d at 709; *McGill,* 801 N.E.2d at 683.

Although Indiana no longer recognizes the common law remedy, a statutory remedy has taken its place. *Basham,* 849 N.E.2d at 709. The Journey's Account Statute provides:

(a) This section applies if a plaintiff commences an action and:

(1) the plaintiff fails in the action from any cause except negligence in the prosecution of the action;

(2) the action abates or is defeated by the death of a party; or

(3) a judgment is arrested or reversed on appeal.

(b) If subsection (a) applies, a new action may be brought not later than the later of:

(1) three (3) years after the date of the determination under subsection (a); or

(2) the last date an action could have been commenced under the statute of limitations governing the original action;

and be considered a continuation of the original action commenced by the plaintiff.

Ind.Code § 34–11–8–1.

When applicable, the Journey's Account Statute saves an action filed in the wrong court. *Keenan v. Butler,* 869 N.E.2d 1284, 1290 (Ind.Ct.App.2007); *McGill,* 801 N.E.2d at 684. That is, the statute enables an action dismissed for lack of personal or subject matter jurisdiction in one court to be refiled in another court despite the intervening running of the statute of limitations. *Basham,* 849 N.E.2d at 709 (citing *Irwin Mortg. Corp. v. Marion County Treasurer,* 816 N.E.2d 439, 443 (Ind.Ct.App.2004)). The purpose of the Journey's Account Statute is to preserve the right of a *diligent* suitor to pursue a

judgment on the merits. *Keenan,* 869 N.E.2d at 1290; *McGill,* 801 N.E.2d at 685; *Mayfield,* 690 N.E.2d at 741. Moreover, our Supreme Court has noted, "[i]ts broad and liberal purpose is not to be frittered away by narrow construction." *Vesolowski,* 520 N.E.2d at 434.

Among the situations to which the Journey's Account Statute applies is when a plaintiff timely commences an original action, and fails in the action due to any cause except negligence in the prosecution of the action. *Keenan,* 869 N.E.2d at 1290 (citing Ind.Code § 34–11–8–1(a)(1)). "A plaintiff cannot be said to 'fail' within the meaning of this statute unless he makes an unavailing effort to succeed ... in good faith, and fails upon some question which does not involve the merits of his case. . . ." *Basham,* 849 N.E.2d at 709 (quoting *Al–Challah v. Barger Packaging,* 820 N.E.2d 670, 673 (Ind.Ct.App.2005)). Further, the statute generally permits a party to refile an action that has been dismissed on technical grounds. *Id.* at 709–10.

The Journey's Account Statute allows the plaintiff to bring a new action as a continuation of the original action, if the party brings the action within three years after the original action failed. *Id.* at 710. While similar to the common law remedy, our court has noted that the Journey's Account Statute " 'do[es] not contemplate a renewal or continuance of the former suit as at common law ..., but that a new and distinct suit shall be commenced, which shall be treated as a continuation of such former suit.' " *Ware v. Waterman,* 146 Ind.App. 237, 241, 253 N.E.2d 708, 711 n. 2 (Ind.Ct.App.1969) (quoting *Pennsylvania Co. v. Good,* 56 Ind.App. 562, 566, 103 N.E. 672, 673 (1913)). The Journey's Account Statute has been applied to revive actions that have lapsed under the provisions of several statutory schemes, including the Indiana Medical Malpractice Act (MMA). *Cox v. Am. Aggregates Corp.,* 684 N.E.2d 193, 195 (Ind.1997) (citing *Vesolowski,* 520 N.E.2d at 433).

"In order to claim the saving power of the Journey's Account Statute, [the plaintiff] must have: (1) commenced an action; (2) failed in that action for any cause except, among other reasons, negligence in the prosecution of the action; and (3) brought her new action not later than three years after the date of the determination of the original action." *Basham,* 849 N.E.2d at 710 (citing I.C. § 34–11–8–1).

The majority holds that if Eads had intended to file a medical malpractice claim along with her negligence claim, she should have filed the two claims alternatively and was required to first file her proposed medical malpractice complaint with the IDOI in a timely manner. This holding presumes that Eads knew or should have known that her claim fell within the MMA. Under this reasoning, the Journey's Account Statute could never salvage a claim mistakenly filed as general negligence, but later determined to be medical malpractice. To me, this thwarts the spirit of the Journey's Account Statute as our courts would be forever barred from hearing the merits of claims whose theories were initially mischaracterized as general negligence.

For more than thirty years, claimants and courts have wrestled with the question of what activities fall within the MMA. *See H.D. v. BHC Meadows Hosp., Inc.,* 884 N.E.2d 849, 851 (Ind.Ct.App.2008), *trans. denied* (court reversed trial court's dismissal of complaint for lack of subject matter jurisdiction after finding claim did not clearly fall within MMA).

Enacted in 1975, the MMA set up a system under which a health care provider meeting qualifications set forth in the MMA ("Qualified Provider") would enjoy

certain benefits, including a limitation on liability. *In re Stephens,* 867 N.E.2d 148, 150 (Ind.2007). Under the MMA, medical malpractice "means a tort or breach of contract based on health care or professional services that were provided, or that should have been provided, by a health care provider, to a patient." Ind.Code § 34–18–2–18. This definition is construed broadly and covers a wide range of actions by providers. 23 JAMES FISHER & DEBRA MILLER, INDIANA PRACTICE § 11:3 (2d ed.2007). "However, not every action or omission by a provider constitutes 'malpractice' within the scope of the [MMA]." *Id.* Only those "acts or omissions that relate to the 'promotion of a patient's health' or occur during the exercise of the provider's 'professional expertise, skill or judgment' are covered by the [MMA]." *Id.* (quoting *Van Sice v. Sentany,* 595 N.E.2d 264, 266 (Ind.Ct.App.1992)).

In *Winona Memorial Foundation of Indianapolis v. Lomax,* 465 N.E.2d 731, 733 (Ind.Ct.App.1984), our court held that a patient's injuries that resulted from a fall in a hospital were not covered by the MMA. In *Lomax,* we said, " 'it seems clear that the legislature did not intend a premises liability claim ... to come within the coverage of the [MMA].' " *Lomax,* 465 N.E.2d at 740. Six years later, in *Collins v. Thakkar,* 552 N.E.2d 507, 508–09 (Ind. Ct.App.1990), *trans. denied,* our court reviewed a trial court's determination that it did not have subject matter jurisdiction over a complaint that alleged wrongful abortion, assault, and battery by a physician. While noting that the MMA did not specifically exclude intentional torts from the definition of malpractice, we reversed the trial court's dismissal of the complaint after finding that this was not a medical malpractice claim for the reason that the MMA pertains to curative or salutary conduct of a health care provider acting within his or her professional capacity and excludes that conduct unrelated to the promotion of a patient's health or the provider's exercise of professional expertise, skill or judgment. *Collins,* 552 N.E.2d at 510.

In 1999, our court continued to refine the parameters of the MMA in *Pluard ex rel. Pluard v. Patients Compensation Fund,* 705 N.E.2d 1035, 1036 (Ind.Ct.App. 1999), trans. denied. There, the Pluards' baby was injured when a surgical lamp, which was being positioned by a nurses' assistant, detached from the wall and hit the baby in the head. 705 N.E.2d at 1036. The hospital and the parents reached a settlement for the hospital's liability, and the parents filed a petition against the Patient's Compensation Fund ("Fund") to recover excess damages. *Id.* The Fund filed a motion for summary judgment, arguing that the parents did not have standing to seek damages from the Fund because the tort underlying the injuries did not sound in medical malpractice, but rather in premises liability. *Id.* The trial court granted the Fund's motion for summary judgment.

Distinguishing the theory of premises liability found in *Lomax,* the Pluards argued that, unlike Lomax who tripped and fell while unattended by medical personnel, here, the baby was being attended by a nurses' assistant under the control and supervision of a physician. *Id.* at 1037. Our court found that the "nurses' assistant's manipulation of the light, while very close in time to the light's falling on [the baby was] not alleged to have caused his injury." *Id.* at 1038. Further, "the duty to secure the light and even the nurses' assistant's duty to position it, did not involve a health care decision involving the exercise of professional skill or judgment." *Id.* Our court affirmed the trial court's grant of summary judgment. *Id.* at 1039.

Judge Sullivan, however, dissented. His reasoning is particularly apt here:

We do know that the overhead light fell and that Pluard was injured. We do not know that it fell because it was not properly attached. The injury occurred when the lamp became disconnected as a result of the nurse's positioning of the lamp as an integral part of the medical treatment.

It may be that the facts will disclose that the lamp was negligently installed or maintained but it also may be that the conduct of the nurse in positioning the light was negligent in some manner and was a cause if not the cause.

Even in the *Lomax* case, relied upon by the majority, the court recognized: "that the question of whether a particular claim falls within the Act is extremely fact sensitive and that a broad band of gray lies in the middle of the spectrum from pure medical malpractice to ordinary non-medical negligence." [*Lomax,*] 465 N.E.2d at 740[n.8].

*Pluard,* 705 N.E.2d at 1039 (Sullivan, J., dissenting).

Finally, in 2008, our court analyzed whether cosmetic laser hair removal, performed by a registered nurse in a doctor's office, constituted "health care" within the meaning of the MMA. *OB–GYN Assocs. of N. Ind., P.C. v. Ransbottom,* 885 N.E.2d 734, 735 (Ind.Ct.App.2008), *trans. denied.* Ransbottom, whose face had been burned during a laser treatment, sued OB–GYN Associates ("OB–GYN") for damages. OB–GYN responded with a motion to dismiss, arguing that the trial court did not have subject matter jurisdiction because the claim was covered by the MMA. The trial court denied the motion to dismiss and OB–GYN brought an interlocutory appeal. On appeal, our court reiterated, " '[T]he fact that conduct occurs in a health care facility cannot, by itself, transmute the conduct into the rendition of health care or professional services.' " *Id.* at 738 (quoting *Collins,* 552 N.E.2d at 510).

While noting that the location of the occurrence is, indeed, one factor to consider in deciding whether a claim falls within the purview of the MMA, location is not determinative. *Id.* "[O]f far greater significance is the fact that Ransbottom's laser hair removal treatment was not recommended or supervised by a physician, nor in any other way conducted under a physician's auspices." *Id.* at 739. Further, while the machine was operated by a registered nurse, "her credentials as a registered nurse were not necessary to perform that task." *Id.* Thirty-four years after the MMA's enactment, our court had to ask, "What is it that distinguishes claims against medical providers as sounding in standard negligence or medical malpractice?" *Id.* at 740. In Ransbottom, the controlling factor was that the treatment could have been administered without medical involvement. *Id.* Finding that Ransbottom's claim did not sound in medical malpractice, our court affirmed the trial court's denial of OB–GYN's motion to dismiss. *Id.*

As the above analysis reveals, more than thirty years after the MMA's enactment, our courts continue to struggle with the question of what distinguishes claims as sounding in medical malpractice. Indeed, the broad spectrum of gray that lies between pure malpractice and ordinary non-medical negligence, which Judge Sullivan referred to in his dissent in *Pluard,* continues to exist. Where a party diligently and timely pursues in good faith a claim of general negligence, and such claim later fails for lack of subject matter jurisdiction upon a finding that the action was, in fact, one of medical malpractice, the Journey Account Statute should permit the filing of the medical malpractice claim. That is the purpose of the statute.

Here, Eads alleged that "at the end of her treatment" she requested a wheel-

chair. *Appellant's App.* at 9. Further, she argued that while she was in the foyer area leading to the garage, "she fell due to the failure of [the] Hospital to insure that she had a safe means of egress." *Id.* Eads may have reasonably believed that her treatment was over and that the injury, caused by her fall on the way to the garage, constituted a claim under premises liability. Likewise, following our court's reasoning in *Pluard,* Eads could reasonably have believed that her claim fell outside the MMA because the Hospital employee's decision to give her crutches "did not involve a health care decision involving the exercise of professional skill or judgment." *Pluard,* 705 N.E.2d at 1038. Additionally, pursuant to *Ransbottom,* Eads may have believed that her claim sounded in general negligence since the act of providing crutches could be done "without the involvement of medical doctors." *Ransbottom,* 885 N.E.2d at 740. Eads' medical malpractice claim is a continuation of the timely-filed negligence claim. The medical malpractice claim relies on the same facts and the same injuries as her general negligence claim.

The majority relies upon McGill. In *McGill,* a plaintiff whose loved one had died in the care of nurse Orville Lynn Majors filed timely class action suits in state and federal court against the hospital and other health care providers. *McGill,* 801 N.E.2d at 680. After the statute of limitations had run, but before the class action suits had been dismissed, McGill filed with the IDOI a proposed medical malpractice claim against the same defendants. *Id.* Two years later, the defendants filed a "Motion for Preliminary Determination of Law, To–Wit Motion for Summary Judgment" arguing that McGill's claim was barred by the statute of limitations. *Id.* The trial court initially denied the motion, but following a second motion for summary judgment granted the motion. *Id.* at 680–81.

On appeal, the *McGill* court noted that the federal and state class actions were pending when McGill filed her state claim. Even so, the court found it " 'impossible to believe that [the] state action should fail because it was brought before rather than after the original federal action, which was timely brought under the statute of limitations, failed.' " *McGill,* 801 N.E.2d at 685 (citing *Torres v. Parkview Foods,* 468 N.E.2d 580, 583 (Ind.Ct.App.1984)). Accepting that the public policy behind the Journey's Account Statute was served where the proposed complaint was filed before the original action failed, the court continued to address whether the malpractice action was a continuation of the state and federal class actions.

The *McGill* court found that it was not. In reaching this conclusion, the court noted that, while McGill's federal and state class actions shared similarities with the proposed medical malpractice complaint, those similarities were insufficient to save the second claim. The court noted that the original claims, unlike the malpractice claim, "alleged negligence, gross negligence and civil rights violations under 42 U.S.C. § 1983." *Id.* at 686.

Unlike *McGill,* Eads's second action includes *the same parties and raises the exact same claim as was presented in her initial action.* In her filing with the IDOI, Eads explained she "filed this same Complaint in the Lake Superior Court," and that the Hospital "has since moved to dismiss based on the fact that it is a medical malpractice case and should have been first filed before the Medical Review Panel." *Appellant's App.* at 14. While changing only the closing paragraph, which contained the standard of review, Eads changed nothing else in her complaint. I believe that Eads's proposed complaint is a continuation of her Superior Court claim.

I would reverse the Circuit Court's grant of summary judgment and remand this claim to the Circuit Court with instructions that the claim be returned to the IDOI for further proceedings by the medical review panel.