ATTORNEY FOR APPELLANT
Sarah C. Jenkins
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES
Gregg S. Gordon
McCordsville, Indiana

John A. Cremer
Indianapolis, Indiana

# In the
# Indiana Supreme Court

FILED
Aug 04 2015, 12:30 pm

CLERK
of the supreme court,
court of appeals and
tax court

No. 89S05-1412-ES-749

DAVID J. MARKEY,

*Appellant (Plaintiff below),*

v.

ESTATE OF FRANCES S. MARKEY, DECEASED;
STEPHEN L. ROUTSON, PERSONAL
REPRESENTATIVE UNDER THE LAST WILL
AND TESTAMENT OF FRANCES S. MARKEY,
DECEASED; STEPHEN L. ROUTSON,
INDIVIDUALLY; AND MADONNA L. REDA,

*Appellees (Defendants below).*

Appeal from the Wayne County Superior Court, No. 89D01-1208-ES-51
The Honorable Charles K. Todd, Jr., Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 89A05-1402-ES-62

**August 4, 2015**

**Massa, Justice.**

"Man sees but a short way into futurity; a single event, unforeseen,
deranges all his plans; and teaches us that man with all his wisdom,
*toils for heirs he knows not who*."

—Chief Justice Andrew Kirkpatrick, <u>Nevison v. Taylor</u>, 8 N.J.L. 43,
46 (1824) (emphasis in original).

When he died, John Markey thought half of his assets would eventually pass to his son, David, pursuant to a contract to make and not revoke a mutual will John executed with his second wife, David's stepmother. Sometime after John was gone, however, David's stepmother breached that contract, instead leaving everything to her own children. David brought suit to enforce the contract, but the defendants prevailed on summary judgment: the trial court found that even though David's suit was not a "claim" in probate, it was still subject to the three-month statute of limitations for a claim, relying on <u>Keenan v. Butler</u>, 869 N.E.2d 1284, 1290 n.6 (Ind. Ct. App. 2007), <u>trans. not sought</u>. We find this was error, as our General Assembly added a statutory definition of "claim" when it enacted our Probate Code in 1953, Ind. Code § 29-1-1-3(a)(2), and we interpret the plain language of that definition as including an action for breach of a contract to make and not revoke a will. We thus reverse, and we remand on the question of the timeliness of David's claim, considered under the Probate Code.

## Facts and Procedural History

Betty Markey passed away in August of 1998, survived by her husband, John, and their only child, David. That same month, John married Frances; the two had been seeing each other for several years while Betty lived in a nursing home. Shortly after reciting their vows, John and Frances contracted to make mutual wills. Consistent with that contract, the wills provided that upon the death of whoever died later, the couple's estate would be divided equally between David

and Frances's granddaughter, Gillian. The contract further mandated the wills would not be revoked, specifying the beneficiaries could bring suit:

> Each of the parties agrees never to revoke or alter in any way, for any reason, his or her Will executed pursuant to this Agreement. Should any Will required by this Agreement be revoked, either party, any beneficiary . . . , or the personal representative of any of them may bring an action in law for monetary damages, or an action in equity for specific performance or other appropriate equitable relief, including the imposition of a constructive trust on the property of any estate in the hands of a personal representative or of any beneficiaries.

App. at 35. David received a copy of the contract and the mutual wills.

About a decade later, John died, and all of his assets passed to Frances, including over half a million dollars in Exxon stock that David's mother inherited from her parents. Although David and Frances maintained a relationship for some time, they eventually had a falling out and stopped communicating. In 2010, unbeknownst to David, Frances executed a subsequent will, revoking the mutual will with John. In this subsequent will, Frances devised all of her property equally between her own two children, Madonna Reda and Stephen Routson, and she appointed Stephen personal representative.

Frances died on July 29, 2012. Stephen admitted her will to probate on August 22 and published notice of its administration in the Western Wayne News on September 5 and 12. Although Stephen had David's father's ashes, he made no effort to contact David following Frances's death. David did not learn about her death or the subsequent will until April 25, 2013. Four days later, and nine months after Frances's death, David sued Frances's estate, Stephen, and Madonna to enforce the contract.

3

The parties agree that Frances's actions were contrary to the valid contract between her and David's father. They disagree, however, about the time frame in which David could seek to enforce it: Madonna moved for summary judgment, arguing David's complaint was time-barred because it was filed more than three months after Frances's will was admitted to probate. In opposition, David maintained he timely filed because he did so within nine months of Frances's death. He reasoned (or, perhaps, conceded) that his claim to enforce the contract constituted a "claim" falling under the Probate Code, but further argued he was a reasonably ascertainable creditor of the estate entitled to actual notice, and since he did not receive that notice, he had nine months to file under Indiana Code section 29-1-7-7(e) (Supp. 2014). The trial court, however, relied on Keenan v. Butler's holding that a breach of contract regarding mutual wills is neither a claim in probate nor a will contest. 869 N.E.2d 1284, 1289 (Ind. Ct. App. 2007), trans. not sought. And it found persuasive a footnote in that case concerning the time to file such a breach of contract action:

> We have not been asked to decide whether there is a time limit within which an action for breach of contract to make a will must be filed. However, statutes of repose, here limiting the time to file to three months, govern both claims and will contests. For timely administration of an estate, a breach of contract to make a will action should similarly be limited. Where the action is challenging the distribution pursuant to a probated will, the petition must be filed within three months of the order admitting the will to probate.

Id. at 1290 n.6 (internal citations omitted). Because David filed more than three months after Frances's will was admitted, the trial court granted summary judgment for Madonna.

David appealed, arguing the trial court erred in relying upon Keenan because that case considered the question of subject-matter jurisdiction, not time to file, and it should not be extended beyond its unique facts. He also contended that a three-month limitation period would violate his right to due process. But a unanimous panel of our Court of Appeals disagreed, affirming the outcome below. Markey v. Estate of Markey, 13 N.E.3d 453, 460 (Ind. Ct. App. 2014). It held David's action for breach of contract was not a "claim" under the Probate Code, so—regardless of

4

whether or not he was a reasonably ascertainable creditor—"his action was not eligible for the nine-month limitation period for filing." Id. at 458. Instead, the panel found his suit barred by the three-month limitation period suggested in Keenan. Id. It also saw no due process violation since Stephen published notice and the evidence did not show David was entitled to actual notice. Id. at 459.

David sought transfer, pointing to—among other things—both lower courts' improper reliance on the common law definition of "claim" rather than the more recent statutory definition enacted by our legislature in the Probate Code. We granted David's petition to transfer, thereby vacating the opinion below. Markey v. Estate of Markey, 21 N.E.3d 838 (Ind. 2014) (table); Ind. Appellate Rule 58(A).

### Standard of Review

Summary judgment is appropriate only when the movant demonstrates there is no genuine dispute of material fact and it is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). If the movant satisfies this burden, the non-movant must come forward with designated evidence showing a disputed fact exists that precludes summary judgment. Asklar v. Gilb, 9 N.E.3d 165, 167 (Ind. 2014). All evidence, and the reasonable inferences drawn from it, are construed in favor of the non-movant, as are "all doubts as to the existence of a material issue." Kroger Co. v. Plonski, 930 N.E.2d 1, 5 (Ind. 2010).

On appellate review, this analysis remains the same; we stand in the shoes of the trial court. S. Shore Baseball, LLC v. DeJesus, 11 N.E.3d 903, 907 (Ind. 2014). Of course, we review any questions of law de novo, and so "we will reverse if the law has been incorrectly applied to the facts." Woodruff v. Ind. Family & Soc. Servs. Admin., 964 N.E.2d 784, 790 (Ind. 2012). Otherwise, we will affirm the trial court's ruling based on any theory supported by record evidence. Id.

5

**Markey's Claim for Breach of Contract Is a "Claim" Under the Probate Code.**

Markey argues his claim for breach of contract to make and not revoke mutual wills constitutes a "claim" as defined by our Probate Code.  We agree.

In 1953, based upon the work of the Indiana Probate Code Study Commission and guided by the American Bar Association's Model Probate Code, our General Assembly enacted our state's modern Probate Code, "the first major modification of Indiana law relating to the administration of decedents' estates in more than half a century."  Possession and Control of Estate Property During Administration: Indiana Probate Code Section 1301, 29 Ind. L.J. 251, 252 (1954).  Up until that time, much of our law on the subject came from Chapter 9 of the Acts of 1881.  Id. at n.3.  The revisions were substantial; thus, "care must be taken in evaluating court decisions before 1954 in the probate field because of the extent to which they may have been influenced by principles of law repudiated or varied by the Probate Code."  1A John S. Grimes, Henry's Probate Law and Practice of the State of Indiana § 5 at 22 (7th ed. 1978).

Under our current statutory scheme, although claims may be brought against an estate, they must be brought rather swiftly.  Indeed, one of the basic tenets underlying the procedural provisions in our Probate Code is "the uniform and expeditious distribution of property of a decedent."  Inlow v. Henderson, Daily, Withrow & DeVoe, 787 N.E.2d 385, 395 (Ind. Ct. App. 2003) (quoting Kuzma v. Peoples Trust & Sav. Bank, Boonville, 132 Ind. App. 176, 183, 176 N.E.2d 134, 138 (1961)).  For this reason, the Non-claim Statute provides that, in general, claims must be filed within three months of publication about the estate's administration:

> Except as provided in IC 29-1-7-7, all claims against a decedent's estate . . . whether due or to become due, absolute or contingent, liquidated or unliquidated, founded on contract or otherwise, shall be forever barred against the estate, the personal representative, the heirs, devisees, and legatees of the decedent, unless filed with the

> court in which such estate is being administered within: (1) three
> (3) months after the date of the first published notice to creditors[.]

Ind. Code § 29-1-14-1(a) (2004).

There is an exception to this three-month limit, however, stemming from the personal representative's obligation to serve actual notice on a "creditor of the decedent . . . who is known or reasonably ascertainable."[1]  Ind. Code § 29-1-7-7(d) (Supp. 2014).  If the personal representative fails to serve actual notice within one month of the first published notice, the reasonably ascertainable creditor gets an additional two months to file, once he finally receives actual notice.  Ind. Code § 29-1-7-7(e).  But, no matter the notice date, all claims are barred nine months after the decedent's death.  Id.

So here, for David's suit to be eligible for filing up until the nine-month bar, he must (1) have a "claim" and (2) be a reasonably ascertainable creditor.[2]

Conveniently, "claims" is defined in the first chapter of the Probate Code, and it "includes liabilities of a decedent which survive, *whether arising in contract or in tort or otherwise*, funeral expenses, the expense of a tombstone, expenses of administration, and all taxes imposed by reason

---

[1] Although reasonably ascertainable creditor is not explicitly defined, the Code does provide some useful context:  "A personal representative shall exercise reasonable diligence to discover the reasonably ascertainable creditors of the decedent . . . ."  Ind. Code § 29-1-7-7.5(a) (2004).  That responsibility includes (1) reviewing reasonably available financial records, and (2) making reasonable inquiries of individuals who are likely to know about the decedent's debts.  Ind. Code § 29-1-7-7.5(b).  If the personal representative complies with the two requirements, creditors who are not discovered are presumed not to be reasonably ascertainable.  Ind. Code § 29-1-7-7.5(d).

[2] It is undisputed that Stephen, as personal representative, did not notify David of Frances's death or of the administration of her estate.

of the person's death." Ind. Code § 29-1-1-3(a)(2) (Supp. 2014) (emphasis added). That definition "appl[ies] throughout this article, unless otherwise apparent from the context." Ind. Code § 29-1-1-3(a). Turning to the Non-claim Statute at issue here, neither its language nor context give any indication that the broad definition penned by the enacting legislature should not apply. Indeed, quite the opposite is true; the Non-claim Statute uses similarly broad language in setting forth the general limit for "all claims . . . *whether founded in contract or otherwise*." Ind. Code § 29-1-14-1(a) (emphasis added). Relying on this broad definition makes sense: given the goal of swift administration, all causes of action against an estate should be subjected to shortened filing limitations laid out in the Code rather than, for instance, the ten-year statute of limitations for traditional breach of contract claims. See Ind. Code § 34-11-2-11 (2014).

Despite the statutory definition of claims, cases analyzing this issue have relied upon this Court's narrower common law definition, which predated our Probate Code: "The word 'claims' . . . is generally construed to mean debts or demands of a pecuniary nature which could have been enforced against a decedent in his lifetime and could have been reduced to a simple money judgment." Williams v. Williams, 217 Ind. 581, 585, 29 N.E.2d 557, 558 (1940), cited by, e.g., In re Feusner's Estate, 411 N.E.2d 166, 168 (Ind. Ct. App. 1980); Matter of Williams' Estate, 398 N.E.2d 1368, 1370 (Ind. Ct. App. 1980); Vonderahe v. Ortman, 128 Ind. App. 381, 387, 146 N.E.2d 822, 825 (1958); see also In re Estate of Whitehead, 718 N.E.2d 1207, 1211 (Ind. Ct. App. 1999); Cardwell v. Estate of Kirkendall, 712 N.E.2d 1047, 1049 (Ind. Ct. App. 1999). The Court of Appeals has specifically noted, however, "Our Supreme Court has not analyzed or applied the definition of claims since the legislature added the definition to the Probate Code in 1953." Keenan, 869 N.E.2d at 1288.

Although the lower courts needed not wait on us, see S. Ry. Co. v. Howerton, 182 Ind. 208, 220, 105 N.E. 1025, 1029 (1914) ("[T]he common law is not continued in force where the same subject is covered by a statute."), we hold the statutory definition of claims supersedes the common law

8

definition we set out 75 years ago. See Dague v. Piper Aircraft Corp., 275 Ind. 520, 529, 418 N.E.2d 207, 213 (1981) ("[O]ne of the acknowledged functions of legislation is to change the common law to reflect change of time and circumstances."). Under the plain language of that definition, David Markey's claim for breach of contract to make and not revoke mutual wills is a claim governed by the Probate Code. It is a liability that survives Frances's death and sounds in contract.

Of course, David's having a claim in probate does not answer the question of whether that claim was timely filed. The general limit for such claims is three months, and he concedes he filed outside of that window. For his claim to survive, David must not only be a claimant but also a "creditor" who is "known or reasonably ascertainable." Ind. Code § 29-1-7-7(e). This issue, however, was not fully adjudicated below: because the trial court found David's claim untimely under Keenan—which applied the wrong definition of "claims"—it did not reach the question of whether David fits the exception to the Non-claim Statute under Indiana Code section 29-1-7-7.[3] And we find the record on appeal inadequate for us to reach a resolution today, as the parties have not fully briefed whether David is a creditor of the estate[4] or whether he was reasonably ascertainable.[5] Moreover, answering this question may very well require that the parties engage

---

[3] David has said the trial court implicitly found he was not a reasonably ascertainable creditor, but we disagree. It merely found David did not have a *constitutional due process right* to actual notice, an issue that we need not address here since we are remanding to the trial court to consider David's claim under Indiana Code section 29-1-7-7.

[4] Indeed, as David's counsel told this Court, "I can't stand here right now and tell you that creditor and claimant are synonymous with one another under the Probate Code." Oral Arg. Video at 10:16–10:25.

[5] At oral argument, David's counsel suggested Stephen's admissions that he made no attempt to notify any creditors or return John's ashes as well as Madonna's admission that she had a copy of Frances's prior will and corresponded with David raise at least an inference his claim was known or reasonably ascertainable. But neither side spilled much, if any, ink on the application of Indiana Code sections 29-1-7-7 and -7.5, focusing instead on Keenan and merely making conclusory statements as to David's status for due process purposes.

in further discovery, which the trial court had initially limited based on its review of <u>Keenan</u> that we reject.[6]  We thus remand to the trial court to determine whether David's claim in probate should proceed as timely filed.

## Conclusion

We reverse and remand for further proceedings consistent with this opinion.

Rush, C.J., and Dickson, Rucker, and David, JJ., concur.

---

[6] David did not have the opportunity to depose Madonna or serve discovery on Gillian.  On remand, we trust the trial court to exercise its sound discretion in managing the scope of discovery.  <u>Richey v. Chappell</u>, 594 N.E.2d 443, 447 (Ind. 1992).